**John J. JAKOMAS, Plaintiff,**

**v.**

**The Honorable H. Patrick McFALLS, Jr., and The County of Allegheny, Pennsylvania, Defendants.**

**James Joseph and Barbara Joseph, Plaintiffs,**

**v.**

**The Honorable H. Patrick McFalls, Jr., and The County of Allegheny, Pennsylvania, Defendants.**

**Civil Action Nos. 01–2329, 01–2294.**

United States District Court, W.D. Pennsylvania.

Oct. 31, 2002.

---

**416**

Samuel J. Cordes, Ogg, Cordes, Murphy & Ignelzi, Pittsburgh, PA, for plaintiff.

Robert O. Lampl, John Lacher, John R. Orie, Jr., Orie & Zivic, Terrence F. McVerry, Caroline Liebenguth, Pittsburgh, PA, for defendant.

## OPINION

COHILL, District Judge.

Plaintiffs in this action are the former tipstaff, law clerk, and secretary for Judge Patrick H. McFalls, Jr., of the Court of Common Pleas of Allegheny County, Pennsylvania. Judge McFalls discharged them in mid-November of 2001. In two separate but related lawsuits, they have filed claims against Judge McFalls in both his official and individual capacities, and against Allegheny County ("the County").[1] The Amended Complaints allege that Judge McFalls and Allegheny County have violated 42 U.S.C. § 1983 and the Pennsylvania Whistleblower Law, 43 Pa. Const. Stat.Ann. § 1421 *et seq.*

Before the Court are motions to dismiss filed by both of the defendants in this matter. We have had the benefit of oral argument on these motions, and have thoroughly considered the submissions of the parties as well as the applicable law. For the reasons set forth below, we will grant Judge McFalls' motions to dismiss the claims brought against him in his individual capacity in part, and deny them in part. We will dismiss the claims brought under the Pennsylvania Whistleblower Law, but will deny his motions to dismiss the § 1983 claims. Judge McFalls' motions to dismiss the claims brought against him in his official capacity will be granted. We will also grant Allegheny County's motions to dismiss in their entirety.

1. Plaintiffs James and Barbara Joseph filed an action at Civil Action No. 01–2294. John G. Jakomas' lawsuit is filed at Civil Action No. 01–2329. The claims set forth in the Amended Complaints in both actions, and the motions and briefs submitted are, with slight exceptions, the same in both cases. Therefore, we will resolve the motions to dismiss in one opinion, to be filed at both case numbers.

## Background

On a motion to dismiss, we accept facts as alleged in the Amended Complaints (Doc. 14, Doc. 12). Since the Amended Complaints include allegations specific to the individual plaintiffs, we turn first to the facts alleged by Barbara Joseph and her husband, James Joseph. Defendant H. Patrick McFalls, Jr., was a Judge of the Court of Common Pleas of Allegheny County, Pennsylvania. Plaintiff Barbara Joseph became Judge McFalls' legal secretary on October 7, 1996. Plaintiff James Joseph became the Judge's judicial law clerk on August 14, 1998.

For over three years, plaintiffs had observed that the Judge was addicted to alcohol and had been treated for alcoholism. They also observed that this abuse of alcohol was affecting the Judge's ability to perform his duties. During October and November of 2001, the plaintiffs observed behavior indicating that Judge McFalls was under the influence of alcohol and/or drugs while performing his official duties.

Judge McFalls was scheduled to return from a vacation in the Cayman Islands on October 22, 2001, to begin three days of pretrial conciliations. When he failed to return, his staff was forced to cancel the conciliations. Judge McFalls had also scheduled arguments for his General Argument List for October 25, 2001. Due to his abuse of alcohol, he instructed Barbara Joseph to reschedule these and to tell the lawyers that he had developed an illness in the islands.

The defendant returned on the evening of October 29, 2001, and spent the night at a hotel near the airport because he was inebriated. The next day he arrived late to court, dressed in vacation clothes and sandals and still under the influence of alcohol. He was scheduled to hear argument in two cases that day, and he was also conducting a jury trial. During the course of the jury trial, a bottle of vodka dropped out of his pocket in front of people.

On October 31, 2001, Judge McFalls instructed Barbara Joseph to cancel his December bench trials and to alert the court's Calendar Control office that he would be unavailable for arguments in December or January. He also instructed his secretary to invite several of his acquaintances to join him as guests in the Cayman Islands for Thanksgiving, and to enter onto his calendar a series of weeks from November through April when he planned to return to the Cayman Islands. Defendant also requested that the plaintiffs help him "get rid" of his jury trial because he planned to return to the Cayman Islands on Thursday November 8 and return on Monday evening, November 12.

From October 31 until November 8, 2001, the Josephs observed that the Judge was conducting court business while under the influence of either alcohol and/or drugs. Judge McFalls was assigned to conduct a jury trial beginning on November 5, 2001. According to the Amended Complaints, the jury trial was delayed in substantial part because Judge McFalls would arrive late in the morning and was generally under the influence of alcohol.

Judge McFalls instructed Barbara Joseph to cancel argument on a motion for summary judgment which had been previously postponed.

On November 9, 2001, Barbara Joseph confronted Judge McFalls about his use of alcohol. According to the Amended Complaint, the Judge replied "Are you threatening me?"

On November 9, 2001, plaintiffs spoke with Judge Joseph James, the Administrative Judge for the Civil Division of the Court of Common Pleas. James Joseph told Judge James that Judge McFalls had

been under the influence of alcohol while performing judicial duties, and that he was drunk at times while on the bench and while deciding cases. James Joseph also told Judge James that the defendant had missed all of his general arguments as well as all of his pretrial conciliations for the trial list because of his condition.

Judge James and President Judge Robert Kelly scheduled a meeting with Judge McFalls to be held upon his return from the Cayman Islands. Judge James told the plaintiffs that he would confront Judge McFalls and give him the opportunity to go to alcohol rehabilitation. If he refused, then Judge James would report the conduct to the Supreme Court.

On November 13, 2001, the plaintiffs telephoned Judge McFalls in the Cayman Islands, and told him that Judge James wanted to see him as soon as he returned. James Joseph told the Judge that he should be prepared because the meeting was called to discuss his drinking behavior.

On the morning of November 14, 2001, an Allegheny County Deputy Sheriff handed Barbara Joseph two envelopes—one for herself and one for her husband James. The letters, dated November 13, 2001, stated: "Effective immediately, you are discharged from your position."

The deputy sheriff then escorted Barbara Joseph from the building, telling her that he had been "instructed to deposit [her] on the sidewalk outside the building." According to the Amended Complaint, Judge McFalls later called James Joseph and told him: "I had to carpet bomb you, because you wanted to send me to rehabilitation."

John Jakomas' Amended Complaint includes the following additional allegations:

Plaintiff John J. Jakomas became Judge McFalls' courtroom deputy, or tipstaff, on March 2, 1998.

During October and November, 2001, Jakomas observed a pattern of behavior indicating that Judge McFalls was under the influence of alcohol while performing his official duties and while driving. On the night of October 5, 2001, Judge McFalls called Jakomas at his home from his car, and told the tipstaff he was driving to College Park, Maryland, and that he was drinking and driving.

Judge McFalls' abuse of alcohol affected his ability to perform his duties. He failed to return from a vacation in the Cayman Islands and missed his entire General Argument list for October 25, 2001.

Due to his abuse of alcohol, Judge McFalls also missed his assigned settlement conferences on October 22, 23, and 24, 2001. Jakomas handled some of the settlement conferences himself, and completed the conciliation reports.

Judge McFalls was assigned to conduct a jury trial on November 5, 2001. During that trial, the Judge was rarely available because of his abuse of alcohol and his planning for a return trip to the Cayman Islands as soon as the trial could be completed. On November 8, 2001, during the trial, Jakomas had a conversation with Judge Robert Gallo, of the Civil Division of the Court of Common Pleas, concerning Judge McFalls' drunkenness.

On November 9, 2001, Jakomas reported McFalls' conduct to Clair Beckwith, the Court of Common Pleas Calendar Control Supervisor. Jakomas told Beckwith that the Judge was conducting judicial business and trials while under the influence of alcohol. Beckwith relayed Jakomas' comments to Judge Joseph James, Administrative Judge of the Civil Division of the Court of Common Pleas of Allegheny County. Jakomas spoke with Judge James on November 13, 2001. Judge James said he was aware that Judge

McFalls was abusing alcohol, and that he would not be permitted to try cases or sign orders. Judge James told Jakomas to alert him when Judge McFalls arrived, but not to be around the following morning to avoid any problems when Judge James confronted Judge McFalls.

On November 13, 2001, Judge McFalls left a voice mail message for Jakomas informing him that there was no reason for him to come into work the next morning. The next day, Judge McFalls fired Jakomas by letter. The letter was given to Judge James' staff and mailed to the tipstaff. It said: "Effective immediately, you are discharged from your position as my Court tipstaff. Please remove all your personal belongings as soon as possible." The letter was also sent to the President Judge of the Court of Common Pleas, to Judge James, and to the Court Administrator.

Judge McFalls later said that he had to "carpet bomb" his staff on November 14 because they were trying to get him into rehabilitation.

██ We take judicial notice of the fact that the Judicial Conduct Board ("the Board") filed formal charges against Judge McFalls with the Court of Judicial Discipline.[2] Trial was set for September 25, 2002. Prior to trial, the parties reached an agreement whereby Judge McFalls resigned his judicial office as of September 16, 2002, and was disqualified from future service in any judicial capacity in the Commonwealth of Pennsylvania. (Letter to the Court from A. Taylor Williams, Legal Counsel to the Court Administrator of Pennsylvania, dated September 23, 2002). As part of the agreement, the Board withdrew its complaints against Judge McFalls. (Motion to Withdraw Complaints dated September 23, 2002).

## Legal Standard

Fed.R.Civ.P. 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief may be granted." Fed.R.Civ.P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir.1993). In considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint, and must draw all reasonable inferences in favor of the plaintiff. *Doe v. Delie*, 257 F.3d 309, 313 (3d Cir. 2001). Dismissal of claims under Rule 12(b)(6) is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim upon which relief may be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

Where the Eleventh Amendment to the United States Constitution is raised as a jurisdictional bar to the court's subject matter jurisdiction, these objections must be considered as a motion to dismiss under Fed.R.Civ.P. 12(b)(1). *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n. 2 (3d Cir.1996).

## Analysis

### A.

**Defendant McFalls' Motion to Dismiss Counts I and III in his Personal Capacity (CA 01–2294 Doc. 10, CA 01–2329 Doc. 9)**

Count I of the Amended Complaints alleges that plaintiffs were discharged for exercising their rights to speak freely on matters of public concern, in violation of

---

2. *In re: Patrick McFalls, Judge of the Court of Common Pleas; Fifth Judicial District; Allegheny County*, 2 JD 2002; 4 JD 2002.

the First and Fourteenth Amendments and 42 U.S.C. § 1983. Count III alleges that their discharge violates the Pennsylvania Whistleblower Law, 43 Pa. Const. Stat.Ann. § 1422 *et seq.* We will address these claims as alleged against Judge McFalls in his personal capacity, *seriatim.*

## 42 U.S.C. § 1983

Plaintiffs assert that Judge McFalls fired them because they reported his abuse of alcohol. They contend that this speech was protected by the First Amendment, and that their discharge violated § 1983. Judge McFalls argues that these claims must be dismissed because the plaintiffs' speech was not protected.

■ A *prima facie* case of retaliation for engaging in speech protected by the First Amendment requires a showing that (1) the plaintiff engaged in constitutionally protected speech; (2) the plaintiff was subjected to adverse action or deprived of some benefit; and (3) the protected speech was a "substantial" or "motivating factor" in the adverse action. *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). To determine the first element, whether an employee's speech is protected by the First Amendment, courts use the balancing test set out in *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) to weigh the interests of the government employer and the public employee. Under *Pickering,* the court must first decide whether the speech at issue addressed a matter of public concern. If so, the court must weigh the employee's interest in speaking out against the government's interest in promoting the effi-

ciency of the services it performs through its employees. *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731. The employee bears the burden of proving that his speech was protected under the particular circumstances. *Connick v. Myers,* 461 U.S. 138, 148, n. 7 & 150, n. 10, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Whether the speech at issue is protected by the First Amendment is a question of law for the court.[3]

■ The defendant contends that we should dismiss these claims under *Sprague v. Fitzpatrick,* 546 F.2d 560 (3d Cir.1976) and *Roseman v. Indiana University,* 520 F.2d 1364 (3d Cir.1975), cases where the Court of Appeals considered whether the nature of the employment relationship was seriously undermined by the employee's comments, and whether the employee's speech was entitled to First Amendment protection. We agree with the defendant that the relationship between a judge and his staff is highly confidential. We recognize that, under *Pickering,* the nature of the working relationship, whether personal loyalty and confidentiality were necessary to that relationship, and whether the employee's comments were disruptive or had the potential for disruption, are all highly relevant to deciding whether an employee's speech is protected. In addition, public employees, such as the plaintiffs in this case, have a limited right under the First Amendment to speak out on matters of pubic concern. *Connick,* 461 U.S. at 146, 103 S.Ct. 1684. It is well settled that although "a public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of public employment[,]" nevertheless the government has a broader authority to

---

**3.** If a court decides that the employee's speech was protected, then whether that speech was a substantial or motivating factor in the alleged retaliatory action, and whether the defendant has proved that it would have

made the same decision in the absence of the protected conduct, are questions of fact for the jury to determine. *Watters v. City of Philadelphia,* 55 F.3d 886, 892 (3d Cir.1995).

regulate the speech of its employees than it has over private citizens. *Id.* at 140, 103 S.Ct. 1684.

However, we conclude that the factors we must balance under *Pickering* are not sufficiently developed at this stage in the litigation for us to make that determination. The Amended Complaints do not establish facts that would allow us to balance the employer's interests. Therefore we find that the plaintiffs have alleged the appropriate facts to survive a motion to dismiss, and we will deny Judge McFalls' motions to dismiss these claims brought against him in his personal capacity.

**Pennsylvania Whistleblower Law**

Count II of the Amended Complaints alleges that Judge McFalls, in his personal capacity, violated the Pennsylvania Whistleblower Law when he discharged the plaintiffs for reporting his abuse of alcohol. 43 Pa. Const.Stat.Ann. § 1421 *et seq.* Plaintiffs assert that they reported "wrongdoing" under the Law, and, further, that the statute is constitutional as applied to Judge McFalls. Judge McFalls argues that the Whistleblower Law violates the Pennsylvania Constitution if applied to a judge or a judicial employee, because the Law infringes upon the Pennsylvania Supreme Court's exclusive authority to regulate the judiciary and thus violates the separation of powers doctrine. Therefore, he contends, these claims must be dismissed.

**(i)**

■ The Pennsylvania Whistleblower Law was enacted to protect public employees "who report a violation or suspected violation of State, local or Federal law" or who "participate in hearings, investigations, legislative inquiries or court actions" from being discharged as a result of such activity. 43 Pa. Const.Stat.Ann. § 1421 (Historical and Statutory Notes).

■ To establish a cause of action for retaliatory discharge under the Law, the public employee must allege that prior to discharge, he made a good faith report of his employer's waste or wrongdoing to the appropriate authorities, and was discharged in reprisal for that report. *Lutz v. Springettsbury Township,* 667 A.2d 251 (Pa.Cmwlth.1995).

Under the Whistleblower Law,

No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

43 Pa. Const.Stat.Ann. § 1423(a).

An employer is defined as "[a] person supervising one or more employees, including the employee in question; a superior of that supervisor; or an agent of a public body." 43 Pa. Const.Stat.Ann. § 1422.

A public body, in turn, is defined by the following categories:

(1) A State officer, agency, department, division, bureau, board, commission, council, authority or other body in the executive branch of government.

(2) A county, city, township, regional governing body, council, school district, special district or municipal corporation, or a board, department, commission, council or agency.

(3) Any other body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or

political subdivision authority or a member or employee of that body.

43 Pa. Const.Stat.Ann. § 1422.

A person alleging a violation of the Law may bring a civil action for appropriate injunctive relief, or damages, or both. 43 Pa. Const.Stat.Ann. § 1424(a).

Violations of the Whistleblower Law are enforced as follows:

A court, in rendering a judgment in an action brought under this act, shall order, as the court considers appropriate, reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combination of these remedies. A court may also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, if the court determines that the award is appropriate.

43 Pa. Const.Stat.Ann. § 1425.

### (ii)

■ Before we consider whether the plaintiffs have alleged a *prima facie* case under the Whistleblower Law, we must first decide whether the statute properly applies to Judge McFalls' decision to discharge his staff. We see this as a two-part inquiry: (1) whether the legislature intended that the Whistleblower Law apply to state judges and their personal employees, and (2) if so, whether such application violates the Pennsylvania Constitution. The Pennsylvania courts have not addressed this issue, and therefore we must predict whether the Pennsylvania Supreme Court would conclude that the statute applies to a Court of Common Pleas judge who has discharged employees on his personal staff.

We are guided in our analysis of the statute by the Pennsylvania Supreme Court's decision in *Bradley v. Pennsylvania Labor Relations Board*, 479 Pa. 440, 388 A.2d 736 (1978), in which the Court considered whether the application of the Public Employee Relations Act ("Act 195" or "PERA") was unconstitutional when applied to judges of the Court of Common Pleas of Philadelphia. The underlying issue in that case was whether court reporters were "public employees" under Act 195 and thus entitled to pursue collective bargaining under the Act. The judges argued that they were not, and that Act 195 was unconstitutional as applied to the state judiciary because it interfered with its right to hire, discharge, and direct the work of court reporters.

In *Bradley*, the Pennsylvania Supreme Court analyzed the scope of Act 195, and held that court reporters were covered by the statute. The Court pointed out that Act 195 expressly referred to "courts of this Commonwealth." 388 A.2d at 738, n. 4. Furthermore, when the legislature amended the County Code to provide that the county commissioners, and not the judges, would represent affected court employees in collective bargaining negotiations, it emphasized that this representation would not affect the judges' rights to hire, discharge, and supervise their employees. 388 A.2d at 739. For these reasons, the Court concluded that the court reporters were covered by the Act.

The Court then turned to the judges' argument that even if the scope of the statute included court reporters it was nevertheless unconstitutional as applied to the courts, because it impermissibly undermined the independence of the judiciary. The Court rejected that argument precisely because nothing in the Act infringed upon judicial authority to select, discharge, and supervise court personnel. 388 A.2d at 739 (citing *Ellenbogen v. County of Allegheny*, 388 A.2d 730 (Pa.1978) ("the Court

upheld the constitutionality of PERA in Ellenbogen 'principally because judges retain the right to hire, discharge, and supervise court personnel' ")). Since this authority was not affected by the statute, it could be applied to court reporters without violating the Pennsylvania Constitution.

The power of the judiciary to make employment decisions about its own employees—to hire, to fire, and to supervise—flows directly from the doctrine of separation of powers embodied in Article V, Section 1 of the Pennsylvania Constitution. *Beckert v. AFSCME*, 56 Pa.Cmwlth. 572, 580, 425 A.2d 859 (1981) (citing *Dechastellux v. Fairchild*, 15 Pa. 18, 20 (1850)); *L.J.S. v. State Ethics Commission*, 744 A.2d 798, 800–01 (Pa.Cmwlth.2000). It is the bedrock of judicial independence and the touchstone of Pennsylvania jurisprudence whenever the court's independence is at issue. The Pennsylvania Supreme Court relied on this principle in a pair of recent decisions that rejected the jurisdiction of the Pennsylvania Human Relations Commission ("PHRC") over employment discrimination claims filed by court employees, a context quite different from the decisions involving collective bargaining and court employees. *See First Judicial District of Pennsylvania v. PHRC*, 556 Pa. 258, 727 A.2d 1110 (1999)(concluding that directing a court to act or not to act in a personnel matter is interference with the operation of the courts which is prohibited by the separation of powers doctrine); *Court of Common Pleas of Erie County v. PHRC*, 546 Pa. 4, 682 A.2d 1246, 1248 (1996) (reasoning that "in order to carry out the duties delegated to the judiciary by the Constitution, the courts must retain the authority to select the people who are needed to serve in judicial proceedings and to assist judges in performing their judicial duties"). With the principle that Pennsylvania judges have the authority to select and discharge court employees firmly in mind, we turn to the statute to determine whether the scope of the Whistleblower Law includes Judge McFalls and his employees.

### (iii)

The object of all statutory construction is to ascertain and effectuate the intent of the legislature, and every statute shall be construed, if possible, to give effect to all its provisions. 1 Pa. Const.Stat.Ann. § 1921(a).

If called upon to construe this statute under similar facts, the Pennsylvania Supreme Court could find that Judge McFalls was the plaintiffs' employer for purposes of the Law because he supervised their employment. Assuming without deciding that the Court would so find, we nevertheless predict that the Court would conclude that Pennsylvania judges are not covered by the statute because such an interpretation conflicts with or negates another provision of the Law.

A careful reading of the enforcement provision of the Whistleblower Law supports the conclusion that the legislature did not intend that the statute be applied to state court judges as employers or to provide a cause of action to discharged members of their personal staff. For violations of the statute, § 1425 provides for reinstatement of the employee, back pay, full reinstatement of benefits and seniority rights. It further permits an award of costs and attorney fees. These remedies cannot be enforced against a judge under Pennsylvania law.

Each of the plaintiffs was a member of Judge McFalls' personal staff. Pennsylvania law has consistently emphasized that only a judge has the authority to hire, supervise, or discharge such employees. *First Judicial District of Pennsylvania v. PHRC*, 556 Pa. 258, 727 A.2d 1110 (1999); *Court of Common Pleas of Erie County v.*

*PHRC,* 546 Pa. 4, 682 A.2d 1246, 1248 (1996); *Eshelman v. Commissioners of Berks County,* 62 Pa.Cmwlth. 310, 436 A.2d 710, 712 (1981); *Beckert v. AFSCME,* 56 Pa.Cmwlth. 572, 425 A.2d 859, 862 (1981); *Bradley v. Pennsylvania Labor Relations Board,* 479 Pa. 440, 388 A.2d 736, 738, n. 3 (1978) (citing *Ellenbogen v. County of Allegheny,* 479 Pa. 429, 388 A.2d 730, (1978)). Therefore, even if Judge McFalls violated the statute, there could be no means of enforcing the relief granted by the Act, because the judge has the exclusive authority to hire or discharge his employees. To decide in plaintiffs' favor on this issue would require that we predict that the Pennsylvania courts would interpret the Whistleblower Law so as to be enforceable against some, but not all, violators. This absurd result would eviscerate the broad, remedial purpose of the legislation.

The plaintiffs would have us restrict the PHRA decisions to their facts. They assert that the Pennsylvania Supreme Court only prohibits the PHRA from adjudicating claims against court employees, and that, in line with these cases, plaintiffs' claims must proceed because claims brought under the statute are brought directly in the courts. We recognize that the inherent power of the judiciary to make employment decisions about judicial employees has often been raised in the context of whether an agency can investigate these employment decisions or recommend a remedy, circumstances which are not presented here. We are confident, however, that the principle underlying decisions where the Pennsylvania courts have addressed the sole authority of judges to hire, discharge, and supervise their own employees, is broad enough to encompass our analysis of the Whistleblower Law in this case.

Therefore, to give effect to all of the statutory provisions, we predict that the Pennsylvania Supreme Court would find that the decision of a Pennsylvania judge to discharge his employees is not within the scope of the Whistleblower Law.

**(iv)**

Even if the legislature intended the Whistleblower Law to apply to a state judge's decision to fire members of his personal staff, our review of Pennsylvania decisions leads to the firm conclusion that the Pennsylvania Supreme Court would declare the Whistleblower Law unconstitutional as applied to the judiciary.

Separation of powers precludes the application of the statute to this case because judges have the right to hire, discharge, and supervise their personnel. We will not repeat our analysis of the decisions in which the Pennsylvania courts uphold a judge's right to make these personnel decisions. We will simply reiterate that, in Pennsylvania, "it cannot be doubted that judicial power includes the authority to select persons whose services may be required in judicial proceedings or who may be required to act as the assistants of the judges in the performance of their judicial functions." *Eshelman,* 436 A.2d at 712 (citing *Sweet v. Pennsylvania Labor Relations Board,* 457 Pa. 456, 322 A.2d 362 (1974)). In other words, "the selection or hiring of judicial assistants is an exercise of judicial power; and so is their discharge." *Beckert,* 425 A.2d at 862.

The enforcement provision of the Whistleblower Law provides for reinstatement of the employee, back pay, full reinstatement of benefits and seniority rights. Since decisions about hiring and discharging staff are the sole preserve of the judge, we predict that the Pennsylvania courts would find the statute unconstitutional as applied to the judiciary because it violates the separation of powers doctrine.

(v)

We have concluded that the Pennsylvania Supreme Court would find that the decision of a Pennsylvania judge to discharge his employees is not within the scope of the Whistleblower Law, and, furthermore, that an attempt to apply it to the judiciary would be unconstitutional because it would violate the separation of powers doctrine. Accordingly, we will grant Judge McFalls' motion to dismiss the claims brought against him in his personal capacity under the Whistleblower Law.[4]

## B.

**Defendant McFalls' Motion to Dismiss Counts I and III in his Official Capacity (CA 01–2294 Doc. 19, CA 01–2329 Doc. 18)**

At the outset we note that Count III, which alleges claims under the Pennsylvania Whistleblower Law, has not been brought against Judge McFalls in his official capacity and we need not address it further. The defendant argues that the claims asserted in Count I are barred by the Eleventh Amendment and should be dismissed under Fed.R.Civ.P. 12(b)(1), and fail to state a viable claim under § 1983 and therefore should be dismissed under Rule 12(b)(6). Plaintiffs insist that reinstatement, the relief sought in this count, is prospective relief, and therefore is not subject to the jurisdictional bar.

(i)

 Generally, state officials acting in their official capacities are not "persons" under § 1983, because they assume the identity of the government that employs them. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). "A suit against a state

official in his or her official capacity is no different from a suit against the State itself." *Id.* The Eleventh Amendment has been interpreted to protect a state from being sued for monetary damages in federal court by its own citizens without its consent. *Pennhurst State School v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Therefore, an action for damages brought against a state official in his or her official capacity is usually barred by the Eleventh Amendment.

 However, the Eleventh Amendment does not bar every suit in which a state official is named as a defendant. In cases where the lawsuit seeks only prospective injunctive relief in order to end a continuing violation of federal law, *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), provides a narrow exception to the Eleventh Amendment defense. "[O]fficial-capacity actions for prospective relief are not treated as actions against the State" and are not barred by the Eleventh Amendment. *Hafer v. Melo*, 502 U.S. 21, 27, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (internal citations omitted). This exception to the jurisdictional bar applies to cases where the state official continues to violate federal law, "as opposed to cases in which federal law has been violated at one time or over a period of time." *Papasan v. Allain*, 478 U.S. 265, 277–78, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir.1996).

In determining whether plaintiffs' § 1983 claim is barred, *Papasan* and *Blanciak* direct us to look carefully at the nature of the relief the plaintiffs seek, and to consider the substance, rather than the form, of the relief requested. *Papasan,*

---

4. Given our conclusion, we do not reach Judge McFalls' argument that the plaintiffs did not report conduct that constitutes "wrongdoing or waste" within the meaning of the statute.

478 U.S. at 278, 106 S.Ct. 2932; *Blanciak,* 77 F.3d at 698. Relief that seeks compensation for a past injury by a state official, even if styled as prospective relief, does not fit within the narrow rule of *Ex Parte Young* and is barred by the Eleventh Amendment. *Id.* at 698; *Papasan,* 478 U.S. at 278, 106 S.Ct. 2932; *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985).

### (ii)

■ Count I of the Amended Complaints asserts that these claims against Judge McFalls in his official capacity seek only prospective relief. Specifically, the plaintiffs seek declaratory and injunctive relief, including reinstatement. Count I, Wherefore clauses at ¶ f. Despite the characterization of this relief as "prospective," we agree with the defendant that this relief is not intended to halt a present, continuing violation of federal law. Thus, the Court of Appeals for the Third Circuit has concluded plaintiffs' claims are barred by the Eleventh Amendment. *Blanciak,* 77 F.3d at 698.

Plaintiffs refer us to *Melo v. Hafer* for the proposition that a claim for reinstatement against an official in her official capacity is a claim for prospective relief and therefore is not barred. 912 F.2d 628, 635 (3d Cir.1990). In that case, the Third Circuit held that plaintiff employees, who had been discharged by the new Auditor General for reasons which were allegedly politically motivated, could maintain claims for reinstatement against the Auditor General in her official capacity under § 1983 because those claims were for prospective relief. *Id.* at 637. Therefore, under *Melo,* claims for reinstatement may be considered as claims for prospective relief.

*Melo,* however, does not prevent the dismissal of plaintiffs' claims in this case. In *Melo,* the Auditor General herself remained in office, and there were positions in that office to which the plaintiffs could be reinstated. No such relief is possible here for two reasons. First, Judge McFalls is no longer in office, and will never hold judicial office in Pennsylvania again. Secondly, Pennsylvania judges have the exclusive authority to hire, discharge, and supervise their employees. *First Judicial District,* 727 A.2d at 1110. Consistent with the separation of powers doctrine, we could not order a sitting judge to reinstate employees he had decided should be discharged. Thus if the nature of the relief plaintiffs are seeking is actual reinstatement, that is not possible. If the relief sought is other compensation instead of reinstatement, that relief is clearly barred by the Eleventh Amendment.

More significantly, *Melo* does not address the dispositive issue in these cases, which is that the Amended Complaints do not allege an ongoing violation of federal law, and the relief sought is not intended to remedy such a violation. The Amended Complaints simply target Judge McFalls' past actions—discharging the plaintiffs. Therefore plaintiffs' claims do not fall within *Ex Parte Young.*

Plaintiffs further assert that a recent Third Circuit decision, *Koslow v. Commonwealth of Pennsylvania,* permits us to grant purely prospective relief under *Ex Parte Young.* 302 F.3d 161, 2002 WL 1925569 (3d Cir.2002). *Koslow* concluded that the state had waived its sovereign immunity under the Rehabilitation Act of 1983, 29 U.S.C. § 794(a), and therefore the Eleventh Amendment did not bar claims brought against the Pennsylvania Department of Corrections. *Koslow* has no bearing on the decision we must reach.

Since plaintiffs have not shown that their discharge was an ongoing violation of federal law, we find that the claims brought against Judge McFalls in his offi-

cial capacity in Count I are barred by the Eleventh Amendment.

### (iii)

Since the allegations do not assert an ongoing violation of federal law, we must conclude that the claims brought against Judge McFalls in his official capacity in Count I of the Amended Complaint must be dismissed because the Eleventh Amendment deprives this Court of subject matter jurisdiction.

### C.

**Defendant Allegheny County's Motion to Dismiss (CA 01–2294 Doc. 6 and CA 01–2329 Doc. 6)**

The County has moved to dismiss Count II, which alleges a violation of 42 U.S.C. § 1983, and Count III, alleging a violation of the Pennsylvania Whistleblower Law, 43 Pa. Const.Stat.Ann. § 1421 *et seq.* We turn first to the Section 1983 claim.

### 42 U.S.C. § 1983

The County argues that Count II must be dismissed because it had no policymaking authority over the Pennsylvania courts, and therefore no authority over Judge McFalls' decision to fire his staff. The plaintiffs assert that Allegheny County is liable under § 1983 for Judge McFalls' decision to discharge them, because the judge was acting as a policymaking official of the County in matters concerning the employees assigned to his chambers.

### (i)

The purpose of § 1983 is to hold "persons," including governmental entities, liable for official acts which violate an individual's constitutional rights. *Monell v. Dept. of Social Services,* 436 U.S. 658, 691–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To establish a violation of 42 U.S.C. § 1983, plaintiffs must show that there was a violation of a right secured by the Constitution and law of the United States, and that the alleged violation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 47–49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Liability under § 1983 may not be imposed on a theory of *respondeat superior. Monell,* 436 U.S. at 691–95, 98 S.Ct. 2018. It is well settled that "[m]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483–84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

Therefore, to determine whether a municipality is liable under § 1983, courts must "identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *McMillian v. Monroe County,* 520 U.S. 781, 784–85, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) (quoting *Jett v. Dallas Independent School District,* 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)). Whether an official possesses final policymaking authority is a question of state law. *Pembaur,* 475 U.S. at 483, 106 S.Ct. 1292.

### (ii)

Count II of the Amended Complaints alleges that Judge McFalls retaliated against the plaintiffs because they exercised their right under the First Amendment to speak freely on matters of public concern, in violation of 42 U.S.C. § 1983. Plaintiffs contend that Judge McFalls is a policymaking official of Allegheny County in matters concerning the employees as-

signed to his chambers. Plaintiffs further aver that the County ratified Judge McFalls' conduct through the involvement of sheriff deputies and the actions of the Allegheny County Facilities Coordinator. They claim that the County delegated to Judge McFalls the authority to take such actions against Plaintiffs and provided him with unreviewable discretion to fire Plaintiffs.[5]

■ The parties do not dispute that Judge McFalls had the final policymaking authority to discharge the plaintiff members of his staff. They disagree, however, as to whether a judge on the Court of Common Pleas of Allegheny County is a policymaker for the Commonwealth of Pennsylvania or for Allegheny County when acting to discharge these employees.

The United States Supreme Court's decision in *McMillian* guides our analysis of whether the state or the County had the final policymaking authority over the decision to fire the plaintiffs. In that case, McMillian sued the county under § 1983 over allegedly unconstitutional actions by the sheriff. The parties agreed that the sheriff was a policymaker for purposes of § 1983, but disputed whether he was a policymaker for the county or for the state of Alabama. *Id.* at 783, 117 S.Ct. 1734.

*McMillian* emphasized that municipal liability under § 1983 depends upon whether "governmental officials are the final policymakers for the local government in a particular area, or on a particular issue." *Id.* at 785, 117 S.Ct. 1734. The Supreme Court held that as to the actions taken against the plaintiff, the sheriff represented Alabama. The Court explained

that although the county "has no direct control over how the sheriff fulfills his law enforcement duty, the Governor and the attorney general do have this kind of control." *Id.* at 791, 117 S.Ct. 1734. Accordingly, the Court affirmed the dismissal of McMillian's § 1983 claims against the county because the sheriff was not acting as its policymaker.

The Supreme Court directed that courts look to "the definition of the official's functions under relevant state law" to determine the function of a governmental official in a particular area for purposes of liability under § 1983. *McMillian*, 520 U.S. at 786, 117 S.Ct. 1734 (citing *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429, n. 5, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997)). In doing so, the federal courts must respect the way a state chooses to structure its government. *St. Louis v. Praprotnik*, 485 U.S. 112, 126, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). In *McMillian*, the Supreme Court looked to the Alabama Constitution and the state's courts' interpretation of the relevant provisions under Alabama law, and concluded that the sheriff represented the state when acting in a law enforcement capacity. Under Alabama law, the county had no law enforcement authority. Thus tort claims brought against sheriffs, based upon their official acts, constituted suits against the state and not against the sheriff's county. *McMillian*, 520 U.S. at 789, 117 S.Ct. 1734.

■ Under Pennsylvania law, the Pennsylvania trial courts are part of the Unified Judicial System of the Commonwealth of Pennsylvania, and are under the direct supervision of the state Supreme

---

**5.** Plaintiffs argue that because the Amended Complaints plead that they were employed by Allegheny County, that Judge McFalls was a policymaker for the County, and that the County had delegated policymaking authority to Judge McFalls, we must take these allega-

tions as true and deny the County's motion to dismiss. However, the identification of policymaking officials is not a question of fact, but is a question for the court to determine. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125–26, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

Court. In Pennsylvania, judges retain the right to hire, discharge and supervise court personnel. *Bradley* 388 A.2d at 738, n. 3 (citing *Ellenbogen v. County of Allegheny*, 479 Pa. 429, 388 A.2d 730 (1978)). Judges retain this authority in accordance with the separation of powers embodied in the PA Constitution. Pa. Const. Art. V, § 1; *Callahan v. Pennsylvania,* 207 F.3d 668, 669 (3d Cir.2000); *Erie County*, 682 A.2d at 1247. *See also First Judicial District*, 727 A.2d at 1112 ("holding that [t]he supreme court has the sole power and 'the responsibility to supervise the 'practice, procedure, and the conduct of all courts' ").

Under Pennsylvania law, then, it is clear that the state and not the County has authority over the conduct of the courts. Therefore, Judge McFalls could not have been acting as a policymaker for the County when he discharged the plaintiffs.

To support their argument that we cannot dismiss their claims against the County at this juncture, plaintiffs refer us to *Brueggman v. Fayette County*, 68 Fair Emp. Prac. Cases (BNA) 1303, 1995 WL 606796 (W.D.Pa.1995), and *DeFranks v. Court of Common Pleas of Fayette County*, 68 Fair Emp. Prac. Cases (BNA) 1306, 1995 WL 606800 (W.D.Pa.1995), two unreported employment discrimination cases decided in this district before the Pennsylvania Supreme Court's decision in *First Judicial District* was handed down. In these cases, a court reporter and a probation officer alleged that Fayette County was liable for sexual harassment by its President Judge under Title VII of the Civil Rights Act of 1964, which prohibits employment discrimination. 42 U.S.C. §§ 2000e *et seq.*, as amended by the Civil Rights Act of 1991. The county argued that it was not liable as an employer as defined by the statute because the judge was not a county policymaker, and the district court judge ruled that the question

could not be decided on motions to dismiss. Plaintiffs also cite to *Graves v. Lowery*, 117 F.3d 723 (3d Cir.1997), in which several employees of a district justice's office in Dauphin County sued for sex discrimination under Title VII, and the Court of Appeals determined that the county exercised sufficient control over these employees to make it a co-employer for purposes of Title VII liability.

These decisions are easily distinguishable from the claims filed against Judge McFalls. At issue in each of these cases was whether the county, along with the judiciary, was a joint employer for purposes of Title VII liability. This is a crucial inquiry under Title VII, which provides a cause of action only against employers, employment agencies, and labor organizations. 42 U.S.C. § 2000e (a), (2)(b) and (c). Indeed, the holding in *Graves* is limited to Title VII. 117 F.3d at 729 (reversing dismissal of plaintiff's claims against Dauphin County because the allegations of the complaint, if proven, were sufficient to impose Title VII liability on the county). The cases before us do not present Title VII claims, so whether the county is a co-employer under these decisions is simply irrelevant.

Plaintiffs further argue that Judge McFalls was acting as a policymaker for the County because the County pays their salaries, provides them with employment benefits, and provides their workplace. Again, the decisions cited in support of this position are Title VII decisions, and thus are not relevant to the issues presented by the cases at bar. In addition, the fact that the County pays the plaintiffs' salaries has no effect on a judge's authority to hire and fire his employees. *Lehigh County v. Pennsylvania Labor Relations Board,* 507 Pa. 270, 489 A.2d 1325, 1327(1985) (citing *Sweet v. Pennsylvania Labor Relations Board,* 457 Pa. 456, 322 A.2d 362 (1974)).

Furthermore, as *McMillian* explains, an official may have final policymaking authority in one area but not in another. 520 U.S. at 785–86, 117 S.Ct. 1734. Thus asserting that the County provides the plaintiffs with indicia of employment could be relevant under Title VII, but has no bearing on whether the County is liable for the constitutional violations alleged under § 1983. The Supreme Court has emphatically rejected such a "categorical, 'all or nothing'" approach to municipal liability. *Id.* at 785, 117 S.Ct. 1734.

### (iii)

We have no difficulty deciding, under Pennsylvania law, that Judge McFalls was not acting as a policymaker for the County when he discharged his staff. Judge McFalls' authority to hire, supervise, and discharge his personal employees came from the Pennsylvania Supreme Court. It did not—and could not—come from the County because the County has no policymaking authority over the Pennsylvania courts. Accordingly, the § 1983 claims alleged against Allegheny County in Count II of the Amended Complaints shall be dismissed.

### Pennsylvania Whistleblower Law

Count III of the Amended Complaints alleges claims for retaliatory discharge against the County under the Pennsylvania Whistleblower Law.

■ The County argues it cannot be found liable under the Whistleblower Law because it was not the plaintiffs' employer. Plaintiffs assert that since they have pled that they were employed by the County and that Judge McFalls was a policymaking official for the County, these claims cannot be dismissed.

As we have previously stated, the Law was enacted to protect public employees. The Law provides that:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

43 Pa. Const.Stat.Ann. § 1423(a).

Thus it protects employees who have been discharged from governmental entities for making a good faith report about wrongdoing to an employer or appropriate authority. *Johnson v. Resources for Human Development, Inc.,* 843 F.Supp. 974 (E.D.Pa.1994).

The statute defines "employer" as "[a] person supervising one or more employees, including the employee in question; a supervisor of that supervisor; or an agent of a public body." 43 Pa.Stat. § 1422. A "public body" includes a county. 43 Pa. Stat. § 1422(2).

■ Whether Judge McFalls was a policymaker for the county when he fired the plaintiffs is a question of law for the Court to decide. We have concluded that he was not. *See supra* pp. 422–24. Plaintiffs' Whistleblower Law claims against defendant Allegheny County must fail because the Law provides a cause of action only against an employer and, although the County could incur liability as an employer under the statute in other circumstances, it has not in this case.[6] The County was not the plaintiffs' employer, and Judge McFalls was not the County's agent. Under Pennsylvania law, the County had no

---

**6.** A public body under the statute includes a county. 43 Pa.Const.Stat.Ann. § 1422(b).

authority to hire, supervise, or discharge the plaintiffs in this case, who were each members of Judge McFalls' personal staff. *Bradley*, 388 A.2d at 738, n. 3 (citing *Ellenbogen v. County of Allegheny*, 479 Pa. 429, 388 A.2d 730, (1978)). Judge McFalls, alone, had that power, and he was not acting as a policymaker or agent for Allegheny County when he exercised it and discharged his staff. We find that the plaintiffs have failed to state a claim under the Whistleblower Law against defendant County, and we will dismiss Count II of the Amended Complaints as to this claim.

### Conclusion

For the reasons set forth above, we will grant defendant Allegheny County's motions to dismiss the claims brought against it in Counts I and II of the Amended Complaints (CA 01–2294 Doc. 6 and CA 01–2329 Doc. 6) in their entirety. We will also grant Judge McFalls' motions to dismiss the claims brought against him in his official capacity (CA 01–2294 Doc. 19, CA 01–2329 Doc. 18). Defendant McFalls' motions to dismiss the claims brought against him in his personal capacity (CA 01–2294 Doc. 10, CA 01–2329 Doc. 9) shall be granted in part and denied in part. Said motions shall be granted insofar as they seek dismissal of the claims against Judge McFalls in Count III, as we have concluded that the Whistleblower Law does not apply to Pennsylvania judges and their personal staff. We will deny these motions insofar as they seek dismissal of the claims against Judge McFalls in his personal capacity in Count I.

An appropriate Order follows.

### ORDER

AND NOW, to-wit, this *31st* day of October, 2002, for the reasons set forth in the accompanying Opinion, it is hereby OR-

DERED, ADJUDGED, and DECREED as follows:

The motions to dismiss filed by defendant Allegheny County (CA 01–2294 Doc. 6 and CA 01–2329 Doc. 6) be and hereby are GRANTED in their entirety, and Allegheny County be and hereby is dismissed as a defendant in these actions;

the motions to dismiss the claims asserted against him in his official capacity, filed by defendant H. Patrick McFalls, Jr. (CA 01–2294 Doc. 19, CA 01–2329 Doc. 18), be and hereby are GRANTED in their entirety; and the motions to dismiss the claims asserted against him in his individual capacity, filed by defendant H. Patrick McFalls, Jr. (CA 01–2294 Doc. 10, CA 01–2329 Doc. 9), be and hereby are GRANTED IN PART and DENIED IN PART as follows: said motions be and hereby are GRANTED insofar as they seek dismissal of the claims asserted in Count III; said motions be and hereby are DENIED insofar as they seek dismissal of the claims asserted in Count I.