# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alfred J. Russo,                           :
                    Petitioner            :
                                          :
          v.                              : No. 185 M.D. 2015
                                          : Submitted:  June 12, 2015
Allegheny County,                         :
and the Court of Common Pleas             :
of Allegheny County, Pennsylvania,        :
Criminal Division,                        :
                    Respondents           :


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION BY
SENIOR JUDGE COLINS                        FILED:  October 7, 2015


          Before the Court are the preliminary objections filed by the Court of

Common Pleas of Allegheny County, Criminal Division (CCP) to the complaint

filed by Alfred J. Russo, following his termination from employment with CCP in

2009.  This matter was initially filed in the Court of Common Pleas of Allegheny

County[1] (Trial Court) against CCP and Allegheny County as dual employers.  The

Trial Court transferred the action against CCP to this Court based on the Trial

Court's lack of jurisdiction over claims asserted against Commonwealth parties,

---

[1] In order to avoid confusion regarding the dual role of the Court of Common Pleas of Allegheny County as both a Respondent and the trial court in this matter, we exclusively refer to the court as "CCP" with respect to its role as the Respondent in this action and as the "Trial Court" with respect to its role as the trial court.

but retained the case against Allegheny County.  For the reasons stated below, we sustain the preliminary objections filed by CCP and dismiss the complaint.

In his complaint, Russo alleges that he was hired by CCP as a minute clerk in 1974 and he was eventually promoted to the position of Manager of the Criminal Division of CCP in charge of all minute clerks, tip staff and arraignment clerks. (Compl. ¶¶7, 8 & n.1.)  Throughout his entire term as an employee of CCP until his discharge in 2009, Russo alleges that he worked under an employment contract and enjoyed tenure in his position as long as he did not commit a crime or "bring[] disrespect upon the Court."  (*Id*. ¶¶8, 9.)  Russo alleges that this employment contract is evidenced through various oral representations, memoranda, administrative orders, regulations and other documents.  (*Id*. ¶9.)  Russo alleges that he continually received high marks on his performance evaluations but he was forced to resign on February 20, 2009 after being threatened with either a demotion to the lowest minute clerk position with a substantial reduction in salary or termination without the possibility of an early retirement. (*Id*. ¶¶7, 12, 16, 17.)  Russo alleges that this constructive discharge was in part a reprisal for his cooperation with federal and state authorities who were investigating CCP and also allowed CCP to clear the way for a patronage hire with no relevant work experience. (*Id*. ¶¶11, 15, 18.)

Russo filed his complaint against CCP and Allegheny County[2] in the Trial Court on February 9, 2011 asserting five causes of action:  (i) wrongful discharge based upon the violation of his employment contract; (ii) failure to pay for accrued sick days in violation of his employment contract; (iii) a common-law

---

[2] Russo named Allegheny County as a defendant on the basis that it was a joint employer with CCP.  (Compl. ¶6.)

2

wrongful discharge claim; (iv) a whistleblower claim based upon his employment contract; and (v) a statutory whistleblower claim. (Compl. ¶¶23-34.) Russo seeks reinstatement to his position and damages to compensate him for a loss of earnings, his lost sick days, reimbursement for medical coverage and emotional distress. (Compl. ¶¶19-22, Relief Requested.)

CCP and Allegheny County each filed preliminary objections to the complaint. On February 12, 2015, the Trial Court issued an order transferring the action against CCP to this Court on the basis that original jurisdiction over claims relating to Commonwealth entities lies exclusively with this Court. *See* 42 Pa. C.S. § 761(a)(1) ("The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings...[a]gainst the Commonwealth government...."). On that same date, the Trial Court issued an order granting Allegheny County's preliminary objections and dismissing the complaint against Allegheny County.[3]

CCP argues in its preliminary objections that the common law claims asserted by Russo are barred by sovereign immunity because the claims are not encompassed in the General Assembly's waivers of sovereign immunity for tort or contract claims against Commonwealth parties. CCP further argues that the claim under the Whistleblower Law[4] must be dismissed because the Whistleblower Law does not apply to CCP, Russo did not allege that he reported wrongdoing to an appropriate authority and the claim was untimely filed outside the six-month statute of limitations. Finally, CCP argues that his claims are precluded by the

---

[3] Although the February 12, 2015 order was not included in the record transferred to this Court, we take judicial notice of this development in a related proceeding. *Grever v. Unemployment Compensation Board of Review*, 989 A.2d 400, 402 (Pa. Cmwlth. 2010); *C.J. v. Department of Public Welfare*, 960 A.2d 494, 497 n.8 (Pa. Cmwlth. 2008).

[4] Act of December 12, 1986, P.L. 1559, *as amended,* 43 P.S. §§ 1421–1428.

doctrine of *res judicata* because Russo had the opportunity to assert these claims in a previous lawsuit in federal court, which involved the same parties, concerned the same alleged wrongful discharge and was decided against Russo.[5] *See Russo v. Allegheny County*, (W.D. Pa., No. 10CV00711, filed Oct. 28, 2010), 2010 WL 4366288.

We first address counts I, II and IV of the complaint which are premised on an alleged employment contract between Russo and CCP. CCP argues that as a court of the unified judicial system it is a part of the Commonwealth government and entitled to sovereign immunity as a Commonwealth entity. The Pennsylvania Constitution provides that the Commonwealth and its officers and employees may only be sued where the General Assembly has authorized the suit. Pa. Const. art. 1 § 11. The General Assembly has specified that "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S. § 2310.

Under Article 5, Section 1 of the Pennsylvania Constitution, the "judicial power of the Commonwealth shall be vested in a unified judicial system." Pa. Const. art. 5, § 1. The courts of common pleas are included in the unified

---

[5] When reviewing preliminary objections to a complaint in our original jurisdiction, this Court must treat as true all well-pleaded, material and relevant facts together with any reasonable inference that can be drawn from those facts. *Township of Derry v. Department of Labor and Industry*, 940 A.2d 1265, 1268 (Pa. Cmwlth. 2008); *Diess v. Department of Transportation*, 935 A.2d 895, 903 (Pa. Cmwlth. 2007). Where a preliminary objection presents a question of law, such as objections related to issues of sovereign immunity and statutory interpretation, our standard of review is *de novo* and our scope of review is plenary. *Feldman v. Hoffman*, 107 A.3d 821, 826 n.7 (Pa. Cmwlth. 2014); *Bender v. Pennsylvania Insurance Department*, 893 A.2d 161, 162 (Pa. Cmwlth. 2006).

4

judicial system. *Id.*; 42 Pa. C.S. § 301(4) ("The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the...[c]ourts of common pleas"). The Pennsylvania Constitution further provides that the Supreme Court has the sole authority to administer, supervise and prescribe rules of practice, procedure and conduct for the courts of the unified judicial system. Pa. Const. art. 5, § 10(a), (c); *see also* 42 Pa. C.S. § 501. Moreover, the General Assembly has defined the "Commonwealth government" in the Judicial Code to include "the courts and other officers or agencies of the unified judicial system," 42 Pa. C.S. § 102, and our appellate courts have relied on this definition in determining that original jurisdiction lies in this Court for civil actions filed against judges and officers of the courts of common pleas pursuant to Section 761(a)(1) of the Judicial Code.[6] *See, e.g.*, *Richardson v. Peters*, 19 A.3d 1047, 1047-48 (Pa. 2011) (*per curiam*) (Clerk of Courts of the Court of Common Pleas of Chester County); *In re Domestic Relations Hearing Room*, 796 A.2d 407, 409-10 (Pa. Cmwlth. 2002) (*en banc*) (President Judge of the Court of Common Pleas of Northumberland County).

While the precise issue of whether courts of common pleas retain sovereign immunity has not been addressed, this Court has ruled that Magisterial District Judges are officers of the Commonwealth, rather than the counties in which they sit, and therefore enjoy sovereign immunity except where abrogated by the state. *Cimino v. DiPaolo*, 786 A.2d 309, 311 (Pa. Cmwlth. 2001); *Heicklen v. Hoffman*, 761 A.2d 207, 209 (Pa. Cmwlth. 2000). Our Supreme Court has also held that judges of the courts of common pleas are officers of statewide

---

[6] As noted above, the Trial Court here transferred Russo's suit against CCP to this Court on this basis.

5

jurisdiction, allowing the Supreme Court to hear a *quo warranto* action to remove a court of common pleas judge in its original jurisdiction. *Commonwealth ex rel. Judicial Conduct Board v. Griffin*, 918 A.2d 87, 92-93 (Pa. 2007). Furthermore, the federal courts have consistently held that Pennsylvania courts, including the courts of common pleas, are immune from suit in federal court under the Eleventh Amendment of the U.S. Constitution. *See, e.g., Benn v. First Judicial District of Pennsylvania*, 426 F.3d 233, 238-41 (3d Cir. 2005); *Callahan v. City of Philadelphia*, 207 F.3d 668, 672-73 (3d Cir. 2000). Accordingly, we hold that CCP, as a court of the unified judicial system, is entitled to the sovereign immunity of the Commonwealth.

Having concluded that CCP is immune from suit except where authorized by the General Assembly, we must determine whether immunity has been waived with respect to the contract-based claims that Russo asserts in counts I, II and IV of the complaint. In Section 1702 of the Procurement Code, the General Assembly has waived sovereign immunity with respect to contract claims against the Commonwealth and its employees and officials acting within the scope of their duties in cases relating to protests of solicitations and awards, pre-litigation resolution of procurement contract disputes and claims in the Board of Claims related to certain classes of contracts. 62 Pa. C.S. § 1702(b); *see also* 62 Pa. C.S. §§ 1711.1, 1712.1, 1721-1726. However, Section 1702 further provides that Commonwealth parties retain sovereign immunity except for those limited waivers. 62 Pa. C.S. § 1702(a); *see also* 1 Pa. C.S. § 2310. As our Supreme Court explained in *Scientific Games International v. Commonwealth*, 66 A.3d 740 (Pa. 2013), by structuring the Procurement Code "to accord immunity, subject only to specific and limited exceptions," the General Assembly erected a jurisdictional bar

6

to any claim against a Commonwealth party arising from contracts that fall outside one of the specific waivers of the Procurement Code. *Id.* at 753-56; *see also Dubaskas v. Department of Corrections*, 81 A.3d 167, 175-76 (Pa. Cmwlth. 2013) (*en banc*).

The waiver of sovereign immunity in Section 1702 applies only to claims against "Commonwealth agencies." 62 Pa. C.S. § 1702(b). A "Commonwealth agency" is defined in the Procurement Code as "[a]n executive agency, an independent agency or a State-affiliated entity," and each of these in turn is specifically defined to exclude "any court or other officer or agency of the unified judicial system." 62 Pa. C.S. § 103. The Procurement Code further directs that to the extent the judiciary wishes to avail itself of the procedure and protections outlined in the Procurement Code, it "may use the [Department of General Services] as its purchasing agency for the purchase of supplies under this part and may use the department to dispose of surplus supplies." 62 Pa. C.S. § 102(c). Thus, in light of the limited waiver of sovereign immunity of Section 1702 as to actions brought pursuant to the Procurement Code and the exclusion of the courts as a contracting party against which such remedies may be sought, we conclude that the General Assembly has not waived sovereign immunity with respect to contract claims against the courts of the unified judicial system. Accordingly, CCP retains its sovereign immunity over counts I, II and IV of Russo's complaint.

Moreover, even if we were to determine that CCP could be a party to a claim under the Procurement Code, we would conclude that Russo's claims would be barred because they are premised on an alleged employment agreement. (*See, e.g.,* Compl. ¶25 ("Plaintiff's termination and constructive discharge, to make

7

room for a patronage hire, comprised a violation of the express terms and conditions of his employment contract....").) As we have explained, because the Procurement Code "*explicitly and unambiguously excludes* 'employment agreements' from what constitutes 'services' under the Code, it follows that 'employment agreements' are not 'services' that can be the subject of a 'contract' that falls within the...scope of the" Procurement Code. *See Dubaskas*, 81 A.3d at 176-77 (quoting 62 Pa. C.S. § 103) (emphasis in original); *see also Armenti v. Pennsylvania State System of Higher Education*, 100 A.3d 772, 777 (Pa. Cmwlth. 2014).

Turning to count III of the complaint, which asserts a common law claim for wrongful discharge, we conclude that CCP is also immune from that claim. A tort claim for wrongful discharge may be brought only in the limited circumstance where an employer terminates an at-will employee in violation of a clear mandate of public policy. *Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009); *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 918 (Pa. 1989). The General Assembly has waived sovereign immunity with respect to tort claims in the portion of the Judicial Code commonly known as the Sovereign Immunity Act. 42 Pa. C.S. §§ 8521–8528. However, this waiver applies only to actions for damages arising out of certain negligent acts committed by "Commonwealth parties." 42 Pa. C.S. § 8522(a), (b). A "Commonwealth party" is defined in the Sovereign Immunity Act as a "Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." 42 Pa. C.S. § 8501. To determine what is or is not a Commonwealth agency, we must look to Section 102 of the Judicial Code, which provides general definitions for the entirety of the Judicial Code, including the

8

Sovereign Immunity Act, and defines a Commonwealth agency as "[a]ny executive agency or independent agency." 42 Pa. C.S. § 102. The definitions of "executive agency" and "independent agency" in turn specifically exclude "any court or other officer or agency of the unified judicial system." *Id*.

Accordingly, it is clear that the courts of the unified judicial system are not "Commonwealth parties" within the meaning of the Sovereign Immunity Act. Because sovereign immunity has not been waived with respect to the courts of the unified judicial system, we must conclude that the courts of the unified judicial system retain their sovereign immunity as related to tort claims. *See* 1 Pa. C.S. § 2310; *see also Tork-Hiis v. Commonwealth*, 735 A.2d 1256, 1258 (Pa. 1999) (holding that the waiver of sovereign immunity for tort claims in the Sovereign Immunity Act is not applicable to a complaint naming only the Commonwealth as a party because the Commonwealth, as distinct from its agencies, is not included within the definition of a "Commonwealth party").

Furthermore, even if we were to conclude that the General Assembly intended to waive sovereign immunity for the courts of the unified judicial system for tort claims, the Sovereign Immunity Act provides for only nine categories of claims as to which immunity is waived.[7] 42 Pa. C.S. § 8522(b). The wrongful discharge claim asserted by Russo does not implicate any of the specifically enumerated exceptions to sovereign immunity and therefore the claim would be barred on that basis as well. *Kull v. Guisse*, 81 A.3d 148, 157 (Pa. Cmwlth. 2013); *LaChance v. Michael Baker Corp.*, 869 A.2d 1054, 1057 (Pa. Cmwlth. 2005).

---

[7] The nine statutory exceptions to sovereign immunity are: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous road conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. C.S. § 8522(b).

9

Finally, we address count V of the complaint which asserts a claim under the Whistleblower Law. The Whistleblower Law provides protection to employees of public employers who report violations of state, local or federal law or participate in investigations, legislative inquiries or court actions. Section 1 of the Whistleblower Law, 43 P.S. § 1421 (historical note); *Bailets v. Pennsylvania Turnpike Commission*, ___ A.3d ___ (Pa., No. 12 MAP 2014, filed Aug. 31, 2015), slip op. at 12, 2015 WL 5104623 at *7. To make a claim under the Whistleblower Law, the employee must show by a preponderance of the evidence that he made or was about to make a good faith report of an instance of wrongdoing or waste to the employer or an appropriate authority and that the employer took an adverse employment action against him as a result of the report. Sections 3(a) and 4(b) of the Whistleblower Law, 43 P.S. §§ 1423(a), 1424(b); *Bailets*, slip op. at 13, 2015 WL 5104623 at *7. An employee may seek either injunctive relief or damages under the Whistleblower Law and if successfully proved, the court may order reinstatement of the employee, payment of back wages, reinstatement of fringe benefits and seniority rights and actual damages. Sections 4(a) and 5 of the Whistleblower Law, 43 P.S. §§ 1424(a), 1425.

CCP argues that the General Assembly did not intend to include the courts of the unified judicial system as an employer within the meaning of the Whistleblower Law because doing so would violate separation of powers and unconstitutionally infringe on the authority of the judiciary in employment matters over its own employees. Under the principle of separation of powers inherent in the Pennsylvania Constitution, the legislature, executive and judiciary are independent, co-equal branches of government and no branch may exercise the functions specifically committed to another branch. *Pennsylvania State*

10

*Association of Jury Commissioners v. Commonwealth*, 78 A.3d 1020, 1032 (Pa. 2013); *Beckert v. Warren*, 439 A.2d 638, 642 (Pa. 1981). Among the powers granted to the judiciary is the responsibility of the Supreme Court to "exercise general supervisory and administrative authority" and "prescribe general rules governing practice, procedure and the conduct" for the courts of the unified judicial system. Pa. Const. art. 5, § 10(a), (c); *see also* 42 Pa. C.S. § 1724(a) (providing that the Supreme Court and delegated authority "shall exercise general supervisory and administrative authority over the personnel of the system"). Our Supreme Court has held that in order to carry out these powers, courts must have exclusive authority to select, discharge and supervise court employees. *First Judicial District of Pennsylvania v. Pennsylvania Human Relations Commission*, 727 A.2d 1110, 1112 (Pa. 1999); *Court of Common Pleas of Erie County (6th Judicial District), Juvenile Probation Department v. Pennsylvania Human Relations Commission*, 682 A.2d 1246, 1247 (Pa. 1996); *Beckert*, 439 A.2d at 649.

No appellate court of the Commonwealth has addressed whether the Whistleblower Law may be constitutionally enforced against the judiciary. However, in *Jakomas v. McFalls*, 229 F. Supp. 2d 412 (W.D. Pa. 2002), the U.S. District Court for the Western District of Pennsylvania addressed this issue and held that the General Assembly did not intend to apply the Whistleblower Law to employment decisions by the courts, and that in any event applying the Whistleblower Law to the judiciary would violate separation of powers principles in the Pennsylvania Constitution. *Id*. at 422-24. In that case, several former staff members of a judge of the court of common pleas brought an action under the Whistleblower Law in which they alleged that they were fired after reporting wrongdoing by the judge to other judges and court employees. *Id*. at 417-19. The

11

District Court observed that even if a court found that a judicial employer violated the Whistleblower Law, there would be no means of enforcing the provision because courts retain exclusive authority over hiring and firing decisions of their employees. *Id*. at 423-24. The District Court concluded that the General Assembly could not have intended the absurd result that the Whistleblower Law would be enforceable against some, but not all, violators. *Id*. at 424.

A review of the text of the Whistleblower Law does not conclusively resolve the issue of whether the legislature intended it to apply to judicial employers.[8] An "employer" under the Whistleblower Law is defined as a "public body" or an individual, partnership, association or corporation that receives money from a public body to perform work or provide services to a public body. Section 2 of the Whistleblower Law, 43 P.S. § 1422. A "public body" is defined as:

> (1) A State officer, agency, department, division, bureau, board, commission, council, authority or other body in the executive branch of State government.
>
> (1.1) The General Assembly and its agencies.
>
> (2) A county, city, township, regional governing body, council, school district, special district or municipal corporation, or a board, department, commission, council or agency.

---

[8] In all matters involving statutory interpretation, we apply the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501–1991, which provides that the "object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a); *Department of Transportation, Bureau of Driver Licensing v. Weaver*, 912 A.2d 259, 264 (Pa. 2006). The clearest indication of legislative intent is generally the plain language of the statute. *Walker v. Eleby,* 842 A.2d 389, 400 (Pa. 2004). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b); *Weaver*, 912 A.2d at 264. It is only when the text of a statutory provision is ambiguous that we will consider general principles of statutory construction in order to determine legislative intent. 1 Pa. C.S. § 1921(c); *Commonwealth v. McCoy*, 962 A.2d 1160, 1166 (Pa. 2009).

> (3) Any other body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body.

*Id.*

The statutory definition of a "public body" could be read broadly to apply to the judiciary under part (3) of the definition as a "body which is created by Commonwealth...authority...or funded in any amount by or through Commonwealth or political subdivision authority." 43 P.S. § 1422; *cf. Denton v. Silver Stream Nursing and Rehabilitation Center*, 739 A.2d 571, 576 (Pa. Super. 1999) (holding that this provision applies to any agency or body that receives public money under the administration of or appropriated by the Commonwealth). However, we find it significant that, while parts (1), (1.1) and (2) of this definition specifically reference the executive branch, the legislative branch and local governments, respectively, the judicial branch was omitted from the definition of a "public body." Indeed, the General Assembly amended the Whistleblower Law in 2014 to make it applicable to the legislative employees by adding part (1.1) of the definition of a "public body," but did not also avail itself of the opportunity to also make the Whistleblower Law applicable to the judiciary. Act of July 2, 2014, P.L. 826, § 1.

Furthermore, we agree with the analysis in *Jakomas* that the enforcement mechanisms prescribed in the Whistleblower Law could not be constitutionally enforced against a judicial employer. Our appellate courts have been steadfast in safeguarding the judiciary's right to hire, fire and supervise its own employees and have struck down any legislation that interferes with that authority. *See First Judicial District*, 727 A.2d at 1112 (holding that the

13

Pennsylvania Human Relations Commission does not have jurisdiction to adjudicate complaints made by court employees against their employers); *Kremer v. State Ethics Commission*, 469 A.2d 593, 595-96 (Pa. 1983) (holding that the State Ethics Commission could not subject judges to a financial disclosure requirement because it would infringe on the Supreme Court's authority to supervise judges); *Eshelman v. Commissioners of the County of Berks*, 436 A.2d 710, 713 (Pa. Cmwlth. 1981), *aff'd* 466 A.2d 1029 (Pa. 1983) (holding that an arbitrator's award pursuant to the Public Employe Relations Act concerning the hiring, supervision and discharge of court-appointed employees usurped the exclusive role of the courts over employment decisions). The remedies set forth in the Whistleblower Law requiring the reinstatement of a fired employee or the reinstatement of seniority rights would interfere with the exclusive right of courts to supervise their employees and therefore would be unconstitutional as applied against court employers. The rules of statutory construction require that we presume that the General Assembly does not intend "a result that is absurd, impossible of execution or unreasonable" or that would "violate the Constitution of...this Commonwealth." 1 Pa. C.S. § 1922(1), (3). Because the Whistleblower Law would infringe on separation of powers and would only be partly enforceable against judicial employers, we conclude that the General Assembly did not intend the judiciary to be included within the definition of an employer subject to the Whistleblower Law. Accordingly, we grant CCP's preliminary objection seeking dismissal of Russo's claim under the Whistleblower Law.[9]

---

[9] Because we determine that the General Assembly did not intend court employers to be subject to the Whistleblower Law, we do not reach CCP's arguments that the whistleblower claim was not filed within the six-month statute of limitations and that Russo did not allege in the complaint that he had reported wrongdoing to CCP or an appropriate authority. We also do not reach CCP's final preliminary objection in which it argues that the claims asserted in this litigation

14

The complaint is dismissed.

_____
JAMES GARDNER COLINS, Senior Judge

Judge McCullough did not participate in the decision in this case.

_____

were barred by *res judicata* as a result of the dismissal of an earlier federal action. Statute of limitations and *res judicata* are affirmative defenses that must be pleaded in an answer as new matter, and thus are not properly before us on preliminary objections. Pa. R.C.P. No. 1030(a). This rule does not preclude our review of CCP's preliminary objections on the basis of sovereign immunity because this Court has recognized that the affirmative defense of sovereign immunity may be decided on preliminary objections where the defense is clearly applicable from the face of the complaint. *See Feldman*, 107 A.3d at 829, 835-36.

15

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Alfred J. Russo, | : |
| Petitioner | : |
| | : |
| v. | : No. 185 M.D. 2015 |
| | : |
| Allegheny County, | : |
| and the Court of Common Pleas | : |
| of Allegheny County, Pennsylvania, | : |
| Criminal Division, | : |
| Respondents | : |

## **O R D E R**

AND NOW, this 7th day of October, 2015, the preliminary objections filed by the Court of Common Pleas of Allegheny County, Criminal Division in the above matter are SUSTAINED and Petitioner's complaint is hereby DISMISSED.


_____
JAMES GARDNER COLINS, Senior Judge