# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Scrip,                                          :
                              Appellant               :
                                                      :
              v.                                      :  No. 881 C.D. 2017
                                                      :  Argued:  May 9, 2018
Debbie O'Dell Seneca, in her individual              :
capacity as President Judge of the Court             :
of Common Pleas of Washington                        :
County; Thomas Jess in his official and              :
individual capacity as both Director of              :
Probation Services and Deputy Court                  :
Administrator of the Court of Common                 :
Pleas of Washington County;                          :
Daniel Clements in his official and                  :
individual capacity as Director of the               :
Washington County Juvenile Probation                 :
Office/Chief Probation Officer; and                  :
County of Washington                                 :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge


OPINION BY JUDGE BROBSON          FILED:  July 23, 2018


Presently before the Court is the appeal of David Scrip (Scrip) from the June 1, 2017 Order of the Court of Common Pleas of Washington County (common pleas), dismissing on preliminary objections the remaining two counts of his

Complaint (Counts I and II)[1] against various judicial branch officers and employees and Washington County arising from his dismissal as a Juvenile Probation Officer in February 2014. In resolving the appeal, the central questions for our consideration are whether the Whistleblower Law[2] affords a cause of action to judicial employees and the extent to which sovereign immunity shields judicial branch officers and employees from civil liability for a claim of wrongful termination of employment.

## I. BACKGROUND

### A. The Complaint

Scrip sets forth the following relevant and material factual allegations in his Complaint. (Reproduced Record (R.R.) 26-64.) It is important to note here that for purposes of appellate review only, we must accept as true the allegations of fact set forth in the Complaint. *Mazur v. Trinity Area Sch. Dist.*, 961 A.2d 96, 101 (Pa. 2008).

Scrip worked as a Juvenile Probation Officer in the Washington County Juvenile Probation Department (Department) for 25 years until his termination in February 2014. At all relevant times, Judge Debbie O'Dell Seneca (retired) (Judge O'Dell Seneca) served as the President Judge of the Court of Common Pleas of Washington County. Thomas Jess (Jess) served at various times as Director of

---

[1] Scrip initiated his action in common pleas with a six-count Complaint. Scrip later voluntarily withdrew three of the counts and, after removal, the United States District Court for the Western District of Pennsylvania dismissed a fourth. The federal district court remanded the remaining two state law claims (Counts I and II) to common pleas.

[2] Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. §§ 1421-1428. "An employee alleging a violation of the Whistleblower Law must show, by a preponderance of the evidence, that prior to the adverse employment action, the employee reported in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority." *Bailets v. Pa. Tpk. Comm'n*, 123 A.3d 300, 308 (Pa. 2015) (citing Section 4(b) of Whistleblower Law, 43 P.S. § 1424(b)).

Probation Services and Deputy Court Administrator, but at all relevant times he was Scrip's superior. Daniel Clements (Clements) served as Director of the Washington County Juvenile Probation Office/Chief Probation Officer and as Scrip's superior.

Since joining the Department in 1988, Scrip "did excellent work," with the best interests of the children he served as his priority. (R.R. 30; Compl. ¶¶ 12, 13.) In or around 2011, Scrip reported directly to Clements, Clements reported to Jess, and Jess reported to Judge O'Dell Seneca. During this time, Clements engaged in a personal and intimate relationship with a Department employee, Beth Stutzman (Stutzman). Stutzman later left the Department for a recruiter position at Abraxas Youth and Family Services (Abraxas), which Scrip describes as a "placement resource for juvenile children." (R.R. 30; Compl. ¶ 16.) As a recruiter for Abraxas, Stutzman would solicit juvenile probation departments to recommend placements at an Abraxas facility. Scrip believed that the intimate relationship between Clements and Stutzman created a conflict of interest between the Department and Abraxas. Both Judge O'Dell Seneca and Jess were aware of the relationship and the alleged conflict, but they did not take any action. Clements, meanwhile, started to pressure probation officers to recommend Abraxas placements, which Scrip believed were not appropriate for particular juveniles. Clements did so to benefit Stutzman and her relationship with Abraxas.

Under pressure from Clements, probation officers made inappropriate Abraxas placement recommendations, which juvenile masters and judges approved unwittingly. The placements benefitted Clements' relationship with Stutzman and her relationship with Abraxas, but the placements were not in the best interests of the juveniles involved. This "unethical practice" continued unabated for some time. (R.R. 32; Compl. ¶ 26.) Both Judge O'Dell Seneca and Jess knew of the activity.

3

Troubled by this practice, Scrip reported his concerns by anonymous letter to then-Pennsylvania Chief Justice Ronald Castille, the Executive Director of the Juvenile Court Judges Commission, and Judge O'Dell Seneca. The Administrative Office of Pennsylvania Courts (AOPC) conducted an investigation, which Scrip avers was a "sham." (R.R. 32-33; Compl. ¶¶ 34, 35.) Following the investigation, in August 2012, Judge O'Dell Seneca reported on the results of the investigation to Department staff. By this time, Scrip's identity as the "whistleblower" had been leaked to Judge O'Dell Seneca and Jess. (R.R. 33; Compl. ¶ 35.) She relayed that the investigation found no relationship between Clements and Stutzman and no inappropriate or unethical placements with Abraxas. All of this, Scrip alleges, "was a complete and total falsehood." (R.R. 8; Compl. ¶ 37.) Judge O'Dell Seneca concluded the meeting by informing Department staff that she would not tolerate further criticisms of Clements or efforts to undermine his authority. What followed, Scrip alleges, were three instances of retaliatory discipline against him, leading ultimately to his termination from employment on February 18, 2014, purportedly for his failure to follow Judge O'Dell Seneca's directive during the aforementioned August 2012 meeting with Department staff.[3]

Scrip filed his Complaint on August 18, 2014, naming as defendants Judge O'Dell Seneca (acting in her individual capacity on behalf of the Commonwealth), Jess (acting in his official capacity on behalf of Washington County or, in the alternative, in his individual capacity on behalf of the

---

[3] The Complaint includes additional allegations of wrongful conduct by Judge O'Dell Seneca and others, including, *inter alia*, allegations of illegal wiretaps. (R.R. 34-36; Compl. ¶¶ 45-55.) As these allegations are not material to the issues before the Court on appeal, we need not detail them here.

4

Commonwealth), Clements (acting in his official capacity on behalf of Washington County or, in the alternative, in his individual capacity on behalf of the Commonwealth), and Washington County.[4] In Count I of the Complaint, Scrip asserted a claim for retaliatory discharge under the Whistleblower Law. In Count II, Scrip asserted a claim for retaliatory discharge in violation of the public policy exception to Pennsylvania's at-will employment doctrine. Scrip sought compensatory and punitive damages, interest, attorney fees, "and any other relief to which he may be entitled whether legal or equitable." (R.R. 36, 38; Compl., Counts I, II, Prayers for Relief.)

## B. Preliminary Objections

Judge O'Dell Seneca filed preliminary objections in the nature of a demurrer to both Counts I and II. (R.R. 149-83.) With respect to Count I, Judge O'Dell Seneca contended that Scrip cannot maintain a claim against her under the Whistleblower Law because the statute does not apply to the Judiciary.[5] With respect to Count II, Judge O'Dell Seneca maintained that Scrip's claim based on the public policy exception to the at-will employment doctrine is barred by sovereign immunity. Judge O'Dell Seneca filed a brief in support of her preliminary objections.

Jess, Clements, and Washington County also filed preliminary objections. (R.R. 65-148.) With respect to Scrip's claim under the Whistleblower

---

[4] In his Complaint, Scrip purports to sue Washington County as the alleged employer of Jess and Clements under the doctrine of *respondeat superior*. In other words, Scrip does not allege that Washington County retaliated against him and unlawfully fired him. Rather, Scrip alleges that Washington County is vicariously liable for the wrongful acts of its employees, Jess and Clements. (Compl. ¶ 5.)

[5] Pa. Const. art. V (establishing unified judicial system under supervision of Pennsylvania Supreme Court).

Law, Jess and Clements claimed to be employees of the Commonwealth shielded from suit by sovereign and official immunity. Moreover, like Judge O'Dell Seneca, Jess and Clements claimed that the Whistleblower Law does not apply to the Judiciary. Washington County claimed immunity from Scrip's Whistleblower Law claim under what is commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa. C.S. §§ 8541-8542. Moreover, Washington County contended that it cannot be held liable under the Whistleblower Law because it was not Scrip's employer. As to Scrip's claim under the public policy exception to the at-will employment doctrine, Washington County reiterated that it cannot be liable for such a claim because it was not Scrip's employer. In addition, Jess, Clements, and Washington County contended that Scrip was a union employee, protected under a collective bargaining agreement (CBA), and not an at-will employee. Scrip, therefore, cannot avail himself of an exception to a doctrine that does not apply to him. Finally, Jess, Clements, and Washington County contended that protected "whistleblower" activities do not fall within the narrow public policy exception to the at-will employment doctrine. Jess, Clements, and Washington County filed a brief in support of their preliminary objections.[6]

Scrip filed a brief in opposition to the preliminary objections. (Original Record (O.R.) # 20.) Addressing the challenges to Count II first, Scrip acknowledged his membership in the union, but he claimed that the CBA provided no right to grieve the termination of his employment because of his at-will employee status. Scrip also disputed the characterization of his public policy exception claim

---

[6] Jess, Clements, and Washington County included in their preliminary objections a motion to strike scandalous or impertinent matter from the Complaint pursuant to Pa. R.C.P. No. 1028(a)(2). Common pleas did not rule on that request, presumably because it dismissed the Complaint in its entirety.

6

as arising under the Whistleblower Law.  Instead, he claimed that the public policy at issue is set forth in Part VIII.A of the Code of Conduct for Employees of the Unified Judicial System (Code of Conduct), adopted by the Pennsylvania Supreme Court and originally published on October 1, 2010.  Scrip appended a copy of the Code of Conduct to his Complaint as Exhibit "C."  (R.R. 56-63.)  At that time, Part VIII.A of the Code of Conduct provided, in relevant part:

### VIII.  DUTY TO REPORT

**A.** Employees of the Unified Judicial System shall report to their immediate supervisor any attempt by anyone to induce them to violate any provisions of this Code of Conduct or any policy of the Unified Judicial System.

*Note: Pennsylvania's Whistleblower Law (43 P.S. § 1421 et seq.) prohibits, among other things, the discrimination or retaliation against an employee who makes a good faith report of wrongdoing or participates in an investigation, hearing or inquiry held by an appropriate authority.*

(Code of Conduct, Oct. 1, 2010, at 7; R.R. 62 (emphasis in original).)  As for Judge O'Dell Seneca's immunity claim with respect to Count II, Scrip contended that Judge O'Dell Seneca waived immunity when she removed the suit to federal district court, citing *Lombardo v. Pennsylvania Department of Public Welfare*, 540 F.3d 190 (3d Cir. 2008).

With respect to Count I, the Whistleblower Law claim, Scrip argued that this Court's recent reported panel decision in *Thomas v. Grimm*, 155 A.3d 128 (Pa. Cmwlth. 2017), is "patently infirm."  (Scrip Br. at 10.)  In crafting the Code of Conduct, Scrip argued, the Supreme Court clearly expressed its intent to provide a

7

remedy to judicial employees under the Whistleblower Law. Scrip rejects any contention that doing so violates the principle of separation of powers.

### C. Common Pleas Decision

By Order dated June 1, 2017, common pleas[7] sustained the preliminary objections "of all defendants" and dismissed Scrip's Complaint with prejudice. In a Memorandum accompanying the Order, common pleas explained its reasons for doing so. (R.R. 9-15.)

Common pleas first noted that all named individual defendants are members of the Judiciary. As to Scrip's wrongful discharge claim (Count II), common pleas held that the individually-named defendants were immune from suit. 1 Pa. C.S. § 2310.[8] Alternatively, assuming for purposes of analysis that Scrip was an at-will employee, common pleas held that the Note in the October 1, 2010 version of the Code of Conduct was not a clear communication of public policy that would support Scrip's wrongful discharge claim. With respect to Scrip's claim under the Whistleblower Law, common pleas followed this Court's decision in *Thomas*, wherein this Court held that the Whistleblower Law does not apply to the Judiciary notwithstanding the reference to the law in the October 1, 2010 version of the Code of Conduct.

---

[7] The Honorable William R. Nalitz, Senior Judge, presided. Senior Judge Nalitz formerly served as President Judge of the Greene County Court of Common Pleas.

[8] 1 Pa. C.S. § 2310 provides in relevant part:

> Pursuant to section 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

8

Common pleas also held that the Complaint failed to clearly state the basis of the claim against Washington County, noting that Washington County had no authority to hire or fire Scrip, who, as a probation officer, was an employee of the Judiciary. Common pleas further noted that it was Judge O'Dell Seneca, and not Washington County, who fired Scrip. Alternatively, common pleas held that Washington County was immune from suit on Scrip's claims under the Tort Claims Act.

Scrip's appeal from the common pleas' decision dismissing his Complaint is presently before the Court.

## II.   DISCUSSION

### A.  Standard and Scope of Review

In reviewing an order sustaining preliminary objections and dismissing a complaint, we look to whether the court abused its discretion or erred as a matter of law. *Shields v. Council of Borough of Braddock*, 111 A.3d 1265, 1268 n.4 (Pa. Cmwlth. 2015). As to preliminary objections challenging the legal sufficiency of a pleading (demurrer), our inquiry is focused as follows:

> We may affirm a grant of preliminary objections only when it is clear and free from doubt that, based on the facts pled, the plaintiff will be unable to prove facts legally sufficient to establish a right to relief. In evaluating the legal sufficiency of the challenged pleading, we accept as true all well-pled, material, and relevant facts alleged and every inference that is fairly deducible therefrom.

*Owens v. Lehigh Valley Hosp.*, 103 A.3d 859, 862 n.4 (Pa. Cmwlth. 2014) (citation omitted). The Court, however, "need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations or expressions of opinion." *Myers v. Ridge*, 712 A.2d 791, 794 (Pa. Cmwlth. 1998), *appeal denied*, 742 A.2d 173 (Pa. 1999). Our analysis raises only a question of law, and, therefore,

9

our standard of review is *de novo* and our scope of review is plenary. *Petty v. Hosp. Serv. Ass'n of Ne. Pa.*, 967 A.2d 439, 443 n.7 (Pa. Cmwlth. 2009) (*en banc*), *aff'd*, 23 A.3d 1004 (Pa. 2011).

### B. Issues and Arguments on Appeal

In his brief, Scrip raises seven separate questions in the Statement of Questions Presented. Summarized by issue, Scrip first questions whether common pleas erred in dismissing his Whistleblower Law claim, asserting that this Court's decision in *Thomas* was in error and not consistent with the Pennsylvania Supreme Court's intent when it adopted the October 1, 2010 version of the Code of Conduct. (Scrip's Questions ## 1-3.) In further support of his intent argument, Scrip points to a March 1, 2011 document titled "A Progress Report On Implementation of the Recommendations of the Interbranch Commission on Juvenile Justice" (Progress Report),[9] which includes the following reference to the Code of Conduct:

> Another action taken by the Supreme Court was the October 2010 promulgation of the Code of Conduct for Judicial Employees. This Court specifically mandated the addition of a paragraph addressing Pennsylvania's

---

[9] Chief Justice Ronald D. Castille, A Progress Report on Implementation of the Recommendations of the Interbranch Commission on Juvenile Justice, Supreme Court of Pennsylvania, March 1, 2011; (R.R. 193-96). The Court in *Thomas* described the Progress Report as follows:

> The Progress Report updated the public on the progress that resulted from the Pennsylvania Supreme Court's joining with the Executive and Legislative branches of government to create the Interbranch Commission on Juvenile Justice (ICJJ). The ICJJ was tasked with investigating the juvenile justice scandal in Luzerne County, Pennsylvania [a/k/a "Kids for Cash"], and developing appropriate recommendations to improve Pennsylvania's juvenile justice system. In May 2010, the ICJJ released its report of recommendations. The Supreme Court took action in response to the ICJJ's recommendations by promulgating, *inter alia*, the Code of Conduct . . . .

*Thomas*, 155 A.3d at 130 n.3.

> Whistleblower Law (43 P.S. § 1421) which protects employees from retaliation for good faith reporting of wrongdoing in the court system and participation in any ensuing investigation. Pennsylvania's judicial employees (approximately 15,000) now have an explicit duty to report any violation of the Code of Conduct or any policy of the court system without fear of retaliation.

(Progress Report at 3.) Scrip also raises the issue of whether common pleas erred in concluding that the individual defendants were entitled to sovereign immunity, contending that the Supreme Court has waived sovereign immunity for claims by Judiciary employees under the Whistleblower Law and wrongful discharge claims based on the public policy exception to the at-will employment doctrine. (Scrip's Questions ## 4, 5). Scrip also alleges that common pleas erred in dismissing the claims against the individual defendants by failing to consider that Scrip sued each of them in their individual capacities. (Scrip's Question # 7.)[10] Scrip does not raise any issue directed toward common pleas' dismissal of his claims against Washington County.

In her brief, Judge O'Dell Seneca contends that this matter is governed by this Court's decisions in *Russo v. Allegheny County*, 125 A.3d 113 (Pa. Cmwlth. 2015), *aff'd per curiam*, 150 A.3d 16 (Pa. 2016), and *Thomas*. Judge O'Dell Seneca argues that common pleas appropriately dismissed Scrip's Whistleblower Law claim under this binding precedent. Judge O'Dell Seneca further claims that because she acted within the course and scope of her employment in terminating Scrip's employment, common pleas correctly held that she was immune from suit for wrongful termination under 1 Pa. C.S. § 2310.

---

[10] In his Question # 6, Scrip simply asks whether, in light of his proposed answers to his first five questions, common pleas' order should be reversed.

11

Like Judge O'Dell Seneca, Jess, Clements, and Washington County argue that *Russo* and *Thomas* control. They also contend that Jess and Clements, like Judge O'Dell Seneca, are immune from suit under 1 Pa. C.S. § 2310. In addition, although Scrip does not argue to the contrary in his brief, they contend that common pleas appropriately recognized Washington County's immunity from suit under the Tort Claims Act. Finally, they argue that Scrip did not make out a claim under the public policy exception to the at-will employment doctrine, in that the Code of Conduct does not constitute a recognized public policy.

## C. Analysis

### 1. Washington County

As noted above, common pleas dismissed Scrip's claims against Washington County for several reasons. The Court has carefully reviewed Scrip's Concise Statement of Errors Complained of on Appeal as well as his brief. We have found no issue or argument relative to common pleas' reasons for dismissing the claims against Washington County. Accordingly, any question relating to the decision of common pleas to dismiss the claims against Washington County are not before the Court in this appeal. *See* Pa. R.A.P. 1925(b)(4)(vii) (issues not raised in statement of errors complained of on appeal are waived); *City of Phila. v. Berman*, 863 A.2d 156, 161 n.11 (Pa. Cmwlth. 2004) (opining that failure to develop issue in argument section of brief constitutes waiver of issue).

### 2. Whistleblower Law Claim

Before turning to our recent panel decisions in *Russo* and *Thomas*, a primer on sovereign immunity will help to set the stage for our analysis. Sovereign immunity emanates from the power vested in the Legislature found in Article I, Section 11 of the Pennsylvania Constitution, which provides, in part: "Suits may be

12

brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." *See Nardella v. Se. Pa. Transit Auth.*, 34 A.3d 300, 302 (Pa. Cmwlth. 2012). Pursuant to this authority, the Legislature passed 1 Pa. C.S. § 2310, which reaffirmed sovereign immunity protection for the Commonwealth and "its officials and employees acting within the scope of their duties." The Pennsylvania Supreme Court has explained:

> The constitutionally-grounded, statutory doctrine of sovereign immunity . . . serves to protect government policymaking prerogatives and the public fisc. To a degree, it has been tempered to recognize the rights and interests of those who may have been harmed by government actors,[11] and/or, in the contract arena, to remove a substantial disincentive for private individuals to pursue government contracts.[12] Understandably, some immunity applications may be distasteful to those who may discern government wrongdoing, or at least unremediated collateral injury to private concerns resulting from governmental policy changes. In light of the constitutional basis for the General Assembly's allocation of immunity, however, the area implicates the separation of powers among the branches of government also crafted by the framers. *Thus, in absence of constitutional infirmity, courts are not free to circumvent the Legislature's statutory immunity directives pertaining to the sovereign.*

*Scientific Games Int'l, Inc. v. Cmwlth.*, 66 A.3d 740, 755 (Pa. 2013) (footnotes omitted) (citation omitted) (emphasis added).

---

[11] The act commonly known as the Sovereign Immunity Act, 42 Pa. C.S. §§ 8521-8528, is an example of a law passed by the Legislature, which waives sovereign immunity and authorizes certain types of negligence claims for damages.

[12] In enacting the Procurement Code, 62 Pa. C.S. §§ 101-2311, the Legislature provided a limited waiver of sovereign immunity, authorizing protest and claim procedures with respect to government contracting as well as certain remedies with respect to breaches of contract before the Board of Claims.

13

In Count I of his Complaint, Scrip asserts a cause of action under the Whistleblower Law against employees of the Judiciary. Generally speaking, the Whistleblower Law precludes a public body from taking any adverse employment action against an employee in retaliation for the employee's good faith report of wrongdoing or waste. Section 3 of the Whistleblower Law, 43 P.S. § 1423. An employee who believes that his or her employer has violated this prohibition may initiate a civil action in a court of competent jurisdiction for damages, injunctive relief, or both. Section 4(a) of the Whistleblower Law, 43 P.S. § 1424(a). Scrip's claim in this lawsuit under the Whistleblower Law is grounded on his alleged good faith report, as required by the Code of Conduct. Scrip, therefore, necessarily maintains that, at all times relevant to this action, he and the individual defendants were officials or employees of the Judiciary, just as common pleas held below. The question with respect to Count I of the Complaint, then, is whether the Whistleblower Law, which creates a statutory cause of action for retaliatory discharge, applies to the Judiciary.

We now turn to our recent panel decision in *Thomas*, which addressed this very question. *Thomas*, 155 A.3d at 135 ("The primary issue in this case is whether the Whistleblower Law applies to judicial employees."). Like this matter, *Thomas* involved a claim by a former Washington County Juvenile Probation Officer (Thomas) of retaliation under the Whistleblower Law. The court of common pleas in that case sustained preliminary objections and dismissed Thomas's claim with prejudice, holding, *inter alia*, that Thomas could not maintain a cause of action under the Whistleblower Law.

On appeal to this Court, Thomas advanced two arguments in support of reversal. First, he contended that the Whistleblower Law, by its plain language,

14

applies to the Judiciary. Second, and alternatively, Thomas argued that if the Whistleblower Law does not apply by its terms to the Judiciary, the Court must nonetheless apply it because the Supreme Court voluntarily referenced the Whistleblower Law in its Code of Conduct and the Progress Report. *Id.* at 135. In rejecting the first argument, the Court applied our decision in *Russo*. In *Russo*, this Court held that the General Assembly did not intend to bring the Judiciary within the scope of the Whistleblower Law, and, therefore, a former Judiciary employee could not maintain a wrongful termination action under that law. *Russo*, 125 A.3d at 120-21.

With respect to the second argument, and after assuming for purposes of resolving the appeal that the Supreme Court *could* expand the scope of the Whistleblower Law to apply to employees of the Judiciary,[13] we examined the references to the Whistleblower Law in the Code of Conduct in order to ascertain the Supreme Court's intent. We specifically rejected Thomas's claim that the Supreme Court's reference to the Whistleblower Law in the Note accompanying Part VIII.A of the Code of Conduct demonstrated the Supreme Court's intent to bring the Judiciary within the scope of that law:

> The Code of Conduct was promulgated pursuant to the Supreme Court's supervisory authority under the Pennsylvania Constitution. Section VIII, Duty to Report, requires all [Unified Judicial System (UJS)] employees to report to their immediate supervisor any attempt by anyone to induce them to violate the Code of Conduct or other policy of the UJS. A Note then describes the Whistleblower Law, which is an example of the public policy in favor of protecting those who report violations of the law or other policy. However, it is just a description: there is nothing in the Note that either makes the Whistleblower Law applicable to the Judiciary, or

---

[13] *Thomas*, 155 A.3d at 138 & n.15.

15

> indicates the Court's intent to bring the Judiciary within the scope of that law. Given the great vigilance and care with which the Supreme Court has protected the independence of the Judiciary and the separation of powers, more than just a general description of a legislative enactment would be necessary to demonstrate the Court's intent to bring the Judiciary under the scope of the Whistleblower Law.

*Thomas*, 155 A.3d at 138-39 (footnote omitted).[14]

Our decisions in *Russo* and *Thomas* establish that (a) the Whistleblower Law, by its terms, does not apply to the Judiciary and (b) the Supreme Court did not intend to make the Whistleblower Law applicable to the Judiciary by including a reference to that law in a Note accompanying Part VIII.A of the Code of Conduct. These two holdings bar Scrip's Whistleblower Law claim in this action. Scrip urges us to abandon our interpretation of the Note in *Thomas* as "absurd," insisting that the Supreme Court has the power under Article V, Section 10 of the Pennsylvania Constitution[15] to run the courts and protect employees "in any way it deems fit." (Scrip Br. at 20.) Our decision in *Thomas*, however, expressly recognizes the Supreme Court's ability to promulgate "independently" rules, policies, and procedures that would protect employees who report wrongdoing. *Thomas*, 155 A.3d at 139. We went on to hold, however, that the Supreme Court did not intend to wield that power by mere reference to the Whistleblower Law in a since-removed Note in the Code of Conduct.

---

[14] As we noted in *Thomas*, in May 2016 the Supreme Court removed the reference to the Whistleblower Law and added alternative language prohibiting retaliation and discrimination within the Judiciary. *Thomas*, 155 A.3d at 139-40.

[15] Pa. Const. art. V, § 10(a), (c) ("Supreme Court shall exercise general supervisory and administrative authority over all the courts" and "shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts . . . including . . . the administration of all courts and supervision of all officers of the Judicial Branch").

While we recognized the Supreme Court's general power under the Pennsylvania Constitution to oversee the Judiciary, that power does not extend to usurping the Legislature's authority. Although in *Thomas* we assumed only for purposes of appeal that the Supreme Court *could* expand the scope of the Whistleblower Law to include the Judiciary, Scrip's insistence, despite our decision in *Thomas*, that it did so in the Note to the Code of Conduct requires us to address the matter more directly and definitively. The General Assembly did not intend to bring the Judiciary within the scope of the Whistleblower Law. *Russo*, 125 A.3d at 121. Any step by the Judiciary to apply the Whistleblower Law in contravention of that intent would be an affront to the separation of powers. *See* Pa. Const. art. II, § 1 ("The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."); *Jefferson Cty. Court Appointed Emps. Ass'n v. Pa. Labor Relations Bd.*, 985 A.2d 697, 707 (Pa. 2009) ("[A] judicial action that infringes on the legislative function also violates the separation of powers."). So too would be any step by the Judiciary to recognize civil suits in the courts by Judiciary employees for wrongful discharge absent the passage of a law by the Legislature authorizing the same. *See* Pa. Const. art. I, § 11 (providing for waiver of sovereign immunity by passage of law by Legislature).[16] Despite Scrip's claims to the contrary, the Supreme Court does not have the power under the Pennsylvania Constitution to waive sovereign immunity.

---

[16] In his brief, Scrip contends that there is no separation of powers issue in this case "because the Pennsylvania Legislature and Executive Branch worked in conjunction with the Pennsylvania Supreme Court to create the Interbranch Commission which promulgated the new Code of Conduct." (Scrip Br. at 20.) As the Pennsylvania Constitution, however, requires any waiver of sovereign immunity to be in the form of a law passed by the Legislature, the Legislature's involvement with the Interbranch Commission on Juvenile Justice, while important and noteworthy, does not equate to the passage of a law.

We do agree with Scrip, however, that Judiciary employees who comply with the Code of Conduct and report wrongdoing are deserving of protection from retaliation. We can cite to well-publicized examples where individuals within the Judiciary have engaged in wrongdoing, shaking the public's confidence in our legal system. In an effort to root out such wrongdoing, the Supreme Court adopted the Code of Conduct, which, *inter alia*, imposed on employees of the Judiciary a duty to report. The Supreme Court may, under its supervisory authority over the Judiciary and without violating the separation of powers, take remedial action when an employee rightfully reports misconduct and is subjected to retaliation. As discussed above, such authority, however, does not extend to effectively amending a statute to create a cause of action under the Whistleblower Law or waiving sovereign immunity.

### 3. Wrongful Discharge—Public Policy Exception

Scrip's legal claim in Count II is grounded in common law:

> As a general rule, a common-law cause of action for wrongful termination is not recognized in Pennsylvania for an at-will employee. An exception to this general rule has been recognized in the very limited circumstances, where allowing an employer to discharge an at-will employee would threaten a clear public policy.

> To justify the application of the public policy exception, the employee must point to a clear public policy articulated in the constitution, statutes, regulations or judicial decisions directly applicable to the facts in the case; it is not sufficient that the employer's action toward the employee is unfair. Even when an important public policy is involved, the employer may still discharge the at-will employee, if the employer has a separate, plausible and legitimate reason for the discharge.

*Davenport v. Reed*, 785 A.2d 1058, 1063-64 (Pa. Cmwlth. 2001) (citations omitted). On appeal, Scrip contends that he should be permitted to pursue his common law

18

claim for wrongful termination because (a) the Supreme Court waived sovereign immunity with respect to such claims; and (b) the Code of Conduct, which requires Judicial employees to report wrongdoing, qualifies as a public policy of the Commonwealth.

As noted above, the Supreme Court did not (and cannot) waive sovereign immunity and thereby authorize civil actions for wrongful termination of employment against the Commonwealth and its officials and employees acting within the scope of their duties. Such power lies exclusively within the Legislature. Scrip has cited to no law enacted by the General Assembly that waives sovereign immunity for such a claim. *Cf. McNichols v. Dep't of Transp.*, 804 A.2d 1264, 1267 & n.1 (Pa. Cmwlth.) (holding sovereign immunity barred common law wrongful termination action against state agency), *appeal denied*, 814 A.2d 679 (Pa. 2002). We thus need not engage in a public policy analysis and will affirm common pleas' dismissal of Count II of the Complaint.

### 4. *"Individual Capacity" Claims*

Finally, we address Scrip's contention that he should be permitted to pursue his claims against the individual defendants in their individual capacities. In support, Scrip directs us to the decision of the United States District Court for the Eastern District of Pennsylvania in *Halstead v. Motorcycle Safety Foundation, Inc.*, 71 F. Supp. 2d 464 (E.D. Pa. 1999).[17] Scrip contends that in *Halstead*, the district court held that sovereign immunity does not bar a claim against a state official acting in his or her individual, rather than official, capacity.

---

[17] Generally, decisions of federal district courts and courts of appeals are not binding on this Court, even where a federal question is involved, but they may have persuasive value. *Weaver v. Pa. Bd. of Prob. & Parole,* 688 A.2d 766, 772 n.11 (Pa. Cmwlth. 1997).

In *Halstead*, the plaintiff filed suit in federal court against the Pennsylvania Department of Transportation (PaDOT) and three employees, all of whom the plaintiff sued in their individual capacities. The plaintiff sought damages under various common law theories, the Whistleblower Law, and for violations of his civil rights under 42 U.S.C. § 1983. Ruling on motions to dismiss, the district court dismissed all claims against PaDOT and its three employees acting in their official capacities, holding that the Commonwealth had not waived its immunity from suit in federal courts set forth in the Eleventh Amendment to the United States Constitution.[18] *Halstead*, 71 F. Supp. 2d at 470. The district court, however, allowed certain common law claims against the named employee defendants to proceed, reasoning:

> We do . . . find that Plaintiff's claims against the individual defendants for defamation and tortious interference with contractual relations have been pled sufficiently to permit them to proceed further. To be sure, sovereign immunity *extends only to Commonwealth employees acting within the scope of their duties.* . . . Inasmuch as Plaintiff has alleged that [employees] were acting both in their individual and their official capacities and we cannot make a conclusive determination at this time as to whether anything that any of these three defendants may have said or did was defamatory or in interference with Plaintiff's relationship with [Motorcycle Safety Foundation], nor can we determine the capacity in which these defendants may have been acting, we shall give the parties the opportunity to take discovery on these claims. If appropriate, of course, these arguments may be revisited on summary judgment.

*Id.* at 474 (emphasis added) (citations omitted).

---

[18] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

To the extent *Halstead* is favorable to Scrip on appeal, the decision stands for the proposition the sovereign immunity only extends to officials and employees "acting within the scope of their duties," which is consistent with the wording of 1 Pa. C.S. § 2310. The corollary is that sovereign immunity does not bar a suit against a state official or employee acting *outside* of the scope of his or her duties. In *Halstead*, the district court reviewed the complaint and, based solely on the allegation that the employees were acting in both their individual and official capacities, allowed the claims to proceed. We, therefore, look to Scrip's Complaint to determine whether he has sufficiently pled claims against the individual defendants in their individual, rather than official, capacities.

Pennsylvania is a fact-pleading state. Accordingly, a plaintiff must plead all facts in his complaint that he must prove in order to recover on his alleged causes of action. *McCulligan v. Pa. State Police*, 123 A.3d 1136, 1141 (Pa. Cmwlth. 2015), *aff'd*, 135 A.3d 580 (Pa. 2016). In *Stackhouse v. Pennsylvania State Police*, 892 A.2d 54 (Pa. Cmwlth.), *appeal denied*, 903 A.2d 539 (Pa. 2006), we considered whether a Pennsylvania State Police employee (Stackhouse) pled sufficient facts in her complaint to maintain a tort action against the Pennsylvania State Police Commissioner (Evanko). We observed that although the complaint included conclusory allegations that Evanko acted outside the scope of his employment, factual averments throughout the complaint supported the opposite conclusion:

> Stackhouse avers that Evanko was aware of the improper conduct of the internal affairs investigation over which he had ultimate authority and refused to take corrective action. Although claiming that Evanko's motivation was personal, there is no allegation of any improper conduct by Evanko, only a failure to properly supervise an internal departmental investigation. There simply are no

21

averments giving rise to a cause of action against Evanko in his individual capacity, but only a failure to exercise an official duty as police commissioner. In her brief to this [C]ourt, Stackhouse argues that it was error to decide this issue at the preliminary objection stage because factual development will illuminate whether Evanko acted within or outside his employment. What this argument fails to comprehend is that she cannot prevail in either case because if Evanko was acting within the scope of his employment, he is shielded by immunity, but in his capacity as an individual he had no duty regarding the investigation.

*Stackhouse*, 892 A.2d at 60 (footnote omitted). Concluding that Stackhouse sought to hold Evanko accountable for allegedly failing to supervise an internal investigation, a duty undeniably within the scope of his employment, this Court affirmed dismissal of the tort claims based on sovereign immunity. *Id.*

Upon examining the allegations in Scrip's Complaint, we similarly conclude that Scrip fails to allege sufficient facts in his Complaint to support his prefatory and conclusory allegations that, with respect to the claims of wrongdoing, the individual defendants acted outside of the course and scope of their employment. Although Scrip contends that the individual defendants had a retaliatory motive, he challenges disciplinary "write-ups" and, ultimately, the termination of his employment. Scrip alleges that he reported to Clements, Clements reported to Jess, and Jess reported to Judge O'Dell Seneca. In other words, accepting as true the allegations in the Complaint, the named individual defendants were within Scrip's chain of command while he was employed as a Juvenile Probation Officer in the Department. To the extent, then, that Clements, Jess, and Judge O'Dell Seneca played any role in disciplining Scrip or in the decision to terminate his employment, they acted within the course and scope of their employment as Scrip's supervisors, regardless of their motives. We thus conclude that common pleas did not err in

22

failing to preserve claims against the individually named defendants in their individual capacities.

## III.   CONCLUSION

For the foregoing reasons, we hold that common pleas did not err in sustaining the preliminary objections and dismissing the remaining counts of Scrip's Complaint with prejudice.  Accordingly, we affirm common pleas' June 1, 2017 Order.

 

P. KEVIN BROBSON, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

23

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Scrip,                                    :
                        Appellant               :
                                                :
            v.                                  :    No. 881 C.D. 2017
                                                :
Debbie O'Dell Seneca, in her individual         :
capacity as President Judge of the Court        :
of Common Pleas of Washington                   :
County; Thomas Jess in his official and         :
individual capacity as both Director of         :
Probation Services and Deputy Court             :
Administrator of the Court of Common            :
Pleas of Washington County;                     :
Daniel Clements in his official and             :
individual capacity as Director of the          :
Washington County Juvenile Probation            :
Office/Chief Probation Officer; and             :
County of Washington                            :

# **O R D E R**

AND NOW, this 23rd day of July, 2018, the Order of the Court of Common Pleas of Washington County, dated June 1, 2017, sustaining preliminary objections and dismissing the Complaint of Appellant David Scrip, is AFFIRMED.

_____
P. KEVIN BROBSON, Judge